349 S.E.2d 910

**Linda HADDOX and Gary Haddox**

v.

**SUBURBAN LANES, INC.**

**No. 16223.**

Supreme Court of Appeals of West Virginia.

Oct. 28, 1986.

Darrell W. Ringer, Morgantown, for appellant.

Charles S. Armistead, Baker & Armistead, Morgantown, for appellee.

NEELY, Justice:

The plaintiffs, Linda Haddox and Gary Haddox, sought to recover damages from the defendant, Suburban Lanes, Inc., in the Circuit Court of Monongalia County for personal injuries alleged to have been caused by the negligence of the defendant, Suburban Lanes, in failing to protect Linda Haddox from injuries inflicted upon her by a third person, Richard Stump, while Mrs. Haddox was an invitee of the defendant at its bowling center in Morgantown.

The circuit court entered a summary judgment for the defendant upon the motions, depositions and affidavits submitted by the parties. In its order granting summary judgment, the court below held as a matter of law that Suburban Lanes could not reasonably have foreseen Mr. Stump's behavior. It is from this order that plaintiffs below appeal. For the reasons stated below, we affirm.

I

The facts of the case are as follows. Shortly after 10:00 p.m. on 11 December 1979, Richard Stump drove to Suburban Lanes and parked his car by the west entrance door. He entered the west door of the bowling center and walked down the main hallway behind Morgantown Police Officer Benjamin A. Mackey, State Conservation Officer Don Golleher, and County Investigator Charles Cira. He walked past the main cashier and down into the walkway that separates the commons area from the bowling lanes. He then fired one shot in the direction of his wife, Dolores Stump, who was sitting at the scoring table at lane 7. He then turned, stepped on the step that goes back to the walkway of the commons area and fired one shot at Officer Mackey, striking him in the neck. He then went up one step to the commons area, stood beside Officer Mackey, turned

around and fired another shot towards his wife, after which he went towards lanes 9 and 10 and fired two more shots in the direction of his wife, striking Linda K. Haddox. Finally he walked toward the ball return on lane 9, where he was subdued by Gary Haddox, John Stewart, Kenneth Haines, and Dale Grimm.

Earlier in the evening, between 8:00 and 8:45 p.m., Mr. Stump came to the control counter of the bowling center and asked whether any lanes were available. He was told that there were no lanes open, as they were all reserved for members of certain bowling leagues. At that time he was unarmed and appeared perfectly normal. After being told that he could not bowl, he left the building without argument.

Either before or after he had asked to be assigned a bowling lane, he spoke with his wife and asked her whether she was going to continue to ignore him. Mrs. Stump advised him to have his lawyer talk to her lawyer. At this time Mr. and Mrs. Stump were having marital problems, and Mrs. Stump was in the process of obtaining a divorce.

Following the discussion with his wife and the discussion at the control counter, Mr. Stump left the building. According to Mrs. Stump, Mr. Stump subsequently telephoned her at the bowling alley twice that evening. The first time he asked that she be paged by her maiden name. When she did not answer the page, he called again, asking that she be paged by her married name. Mrs. Stump was advised by a friend to answer the call, and she did. In this conversation Mr. Stump again asked Mrs. Stump whether she was going to continue to ignore him. Mrs. Stump advised him that she intended to do so, told him not to call her again, and hung up the telephone.

At some point in the evening, Mrs. Stump discussed these events with Judith L. Mackey, the wife of Officer Benjamin A. Mackey. Mrs. Mackey and Mrs. Stump were bowling together that evening. Mrs. Mackey asked Mrs. Stump, "Do you want me to call the police? Do you want me to ask Ben what to do so that he can come?" Mrs. Stump replied, "Yes, I wish you would." Mrs. Mackey telephoned the police station, telling the person who answered who she was and asking that person to have her husband (Officer Benjamin Mackey) call her at the bowling center. About fifteen or twenty minutes later Officer Mackey came into the bowling center. When he arrived Mrs. Mackey told him that Mr. Stump had been in the building and had told Mrs. Stump that he would return. Mrs. Mackey asked her husband whether he could come back or have another officer there. Officer Mackey replied that he didn't think there would be any problem, but he would try to be there, depending on how busy he was. Shortly thereafter the shooting began.

Officer Mackey was on duty at the time he entered the bowling center. He testified that his wife "wanted to know if I could try to be outside of the bowling alley when they got off or out—when the bowling let out at approximately 11:30. They were afraid he might be back in the parking lot."

While Officer Mackey was at the bowling center he had a conversation with Conservation Officer Don Golleher. Officer Golleher told Officer Mackey that he (Golleher) was also there because his wife was worried about Mr. Stump's creating a disturbance. Mr. Golleher was not armed. While Officer Mackey was talking with Officer Golleher, County Investigator Charles Cira joined them. Apparently, Mr. Cira had no knowledge of any of the problems. He was at the bowling center simply to observe some of his friends bowl.

Officer Mackey testified that he did not expect Stump to enter the building that night. He thought that "... if he would come back, he would come back at 11:30 considering he had been arrested two weeks before for being inside. I didn't think he would come back inside the bowling alley if he saw a police car sitting there. Now, I wasn't staying there to keep him out of it."

While Officer Mackey was there he did not have any conversation with any of the bowling center's employees. He did not try to find out whether Mr. Stump had

been there or whether the bowling center personnel were concerned about Mr. Stump's being there because Officer Mackey "didn't expect trouble."

Linda Haddox and her husband, Gary Haddox, entered the bowling center at approximately 9:00 p.m. When they arrived at Suburban Lanes they noticed Richard Stump sitting in his car in the parking lot. They told Martha Carr, an employee of Suburban Lanes, that Mr. Stump was in the parking lot. Mrs. Haddox told both her husband and Dolores Golleher that Mr. Stump was in the parking lot and that she wanted to leave. However, others convinced her to stay. Mrs. Haddox testified that "everyone convinced me that I was overreacting to the situation." Neither Mr. nor Mrs. Haddox telephoned the police.

Mrs. Haddox had known Mr. Stump for approximately eleven years. When asked whether her attitude toward him was one of fear or discomfort, she testified: "I would say it was probably more discomfort and unease. I was just not comfortable knowing he was around. Not so much that I thought he was going to harm me; however, I did not want to be in the presence of an argument, a scene, or anything that may have occurred that night. I felt that he was possibly dangerous. Not so much to me but that he was very capable of doing something." Mrs. Haddox testified that she did not fear for her own physical well-being on the night of the shooting. She testified that, had she anticipated that Mr. Stump would shoot at his wife, she would not have remained at Suburban Lanes.

According to Mrs. Haddox, the other bowlers felt that they were in no danger. Neither Mrs. Haddox nor any of her friends felt that Mr. Stump was going to shoot anyone. Even Mrs. Stump, the person Mr. Stump intended to shoot, stated that she did not "dream nor anticipate that Richard Stump would attempt to shoot me or to act in the manner which he did on December 11, 1979."

Two weeks before the night of the shooting, on 27 November 1979, Richard Stump created a disturbance in the bowling center. He had an argument with one or more persons, including his wife, and was loud and obnoxious. The manager of the bowling center telephoned the Morgantown City Police to have him removed from the premises. Two police officers came to the bowling center, and Mr. Stump left without resistance. He was arrested for public intoxication.

II

Appellants contend that Suburban Lanes was negligent in permitting Richard Stump upon its premises and in not taking proper steps to remove him from the premises at the time of Mrs. Haddox's injury. Appellants maintain that Suburban Lanes, its agents or employees, knew or should have known of the violent and dangerous character of Mr. Stump, and that he was likely to injure or attempt to injure his estranged wife, Dolores Stump, or others in her presence.

■ Mrs. Haddox entered Suburban Lanes Bowling Center on the evening in question for the purpose of bowling. "A person is an invitee when for purposes connected with the business conducted on the premises he enters or uses a place of business." Syl. Pt. 2, *Puffer v. Hub Cigar Store,* 140 W.Va. 327, 84 S.E.2d 145 (1954). Mrs. Haddox was therefore a business invitee of Suburban Lanes, and Suburban Lanes accordingly owed her the duty owed to all business invitees.

■ "The owner or the occupant of premises used for business purposes is not an insurer of the safety of an invited person present on such premises and, if such owner or occupant is not guilty of negligence or willful or wanton misconduct and no nuisance exists, he is not liable for injuries there sustained by such invited person." *Id.* at Syllabus Point 3. "The owner or the occupant of premises owes to an invited person the duty to exercise ordinary care to keep and maintain the premises in a reasonably safe condition. This duty requires the owner or the occupant of premises to exercise ordinary care to protect an invited person from injury inflicted by oth-

er persons present on such premises; and if such owner or occupant fails to perform such duty and his negligence is the proximate cause of injuries inflicted upon an invited person by another person such owner or occupant is liable to such invited person." *Id.* at Syllabus Point 4. Suburban Lanes can therefore be held liable for Mrs. Haddox's injuries only if it negligently failed to keep its premises in a reasonably safe condition, and such negligence was the proximate cause of her injuries.

"To be actionable, negligence must be the proximate cause of the injury complained of and must be such as might have been reasonably expected to produce an injury." Syllabus Point 3, *Hartley v. Crede,* 140 W.Va. 133, 82 S.E.2d 672 (1954). "A person is not liable for damages which result from an event which was not expected and could not reasonably have been anticipated by an ordinarily prudent person." *Puffer, supra,* at Syllabus Point 6. " 'Foreseeable injury is a requisite of proximate cause, and proximate cause is a requisite for actionable negligence, and actionable negligence is a requisite for recovery in an action for personal injury negligently inflicted.' *Osborne v. Atlantic Ice and Coal Company,* 207 N.C. 545, 177 S.E. 796." *Puffer, supra,* at Syllabus Point 7.

The focus of our inquiry is, therefore, the extent to which Suburban Lanes could reasonably have foreseen the actions of Mr. Stump on the night in question. As formulated by Justice Cardozo in the landmark opinion of *Palsgraf v. Long Island Railroad Company,* 248 N.Y. 339, 162 N.E. 99 (1928): "The risk reasonably to be perceived defines the duty to be obeyed." 248 N.Y. at 344, 162 N.E. at 100. As we stated in *Mathews v. Cumberland Allegheny Gas Company,* 138 W.Va. 639, 653, 77 S.E.2d 180, 188 (1953):

Failure to take precautionary measures to prevent an injury which if taken would have prevented the injury is not negligence if the injury could not reasonably have been anticipated and would not have happened if unusual circumstances had not occurred. [citations omitted] Where a course of conduct is not pre-

scribed by a mandate of law, foreseeability of injury to one to whom duty is owed is the very essence of negligence. [citations omitted]. A person is not liable for damages which result from an event which was not expected and could not have been anticipated by an ordinarily prudent person. [citations omitted]. If an occurrence is one that could not reasonably have been expected the defendant is not liable. Foreseeableness or reasonable anticipation of the consequences of an act is determinative of defendant's negligence. [citations omitted].

The petitioners allege that Suburban Lanes should have foreseen the actions of Mr. Stump based on its knowledge of the following facts: 1) two weeks before the shooting incident Mr. Stump created a disturbance at Suburban Lanes during which he was loud, obnoxious, argumentative, and intoxicated, but not violent; 2) Mr. Stump had come to the bowling center earlier in the evening and asked the desk clerk whether he could bowl; and 3) Mr. Stump was in the parking lot at the time that Gary and Linda Haddox entered the bowling center. Based on knowledge of these facts alone, we do not believe that an ordinarily prudent person could have foreseen that Mr. Stump would enter the bowling alley, armed with a gun, and shoot the place up.

According to the record, no one expected Mr. Stump to act as he did. Those who considered it likely that he would return to the bowling center that night expected only that he might create a disturbance. Mrs. Stump, Mrs. Haddox, Mrs. Mackey, and Mrs. Golleher all considered it likely that Mr. Stump would return to the bowling center that evening. Had they anticipated that Mr. Stump would act violently, they would not have remained at the bowling center. Had Officer Golleher anticipated that Mr. Stump would behave violently, he would not have come to the bowling center unarmed. Had Officer Mackey expected such violence from Mr. Stump, he would have positioned himself in order to prevent the danger. No one, not even Mrs. Stump,

anticipated that Mr. Stump would create a violent disturbance.

*Puffer v. Hub Cigar Store,* 140 W.Va. 327, 84 S.E.2d 145 (1954) presented a case similar to this one. In *Puffer,* the plaintiff was injured in the defendant corporation's restaurant when an intoxicated man fell near the plaintiff and grabbed the plaintiff's ankle, pulling him to the floor. As a result of the fall the plaintiff suffered a fractured hip. The plaintiff had earlier observed the man on the sidewalk in front of the defendant's restaurant in a noticeably intoxicated condition. The man had staggered and fallen upon the street and against the plate glass window at the front of the defendant's restaurant. After remaining on the sidewalk for about ten minutes, the man entered the room, staggered, stumbled and appeared to be unable to walk in a normal manner. The plaintiff brought this to the attention of an employee of the defendant, advising him to get the man out of the room. This employee then escorted the man from the room. About five minutes later the man reentered the room, stood beside the plaintiff at the lunch counter and fell, striking his head against the counter. In the process he grabbed one of plaintiff's legs, causing the plaintiff to fall to the floor and fracture his hip. This Court reversed a jury verdict for the plaintiff holding that the event injuring the plaintiff could not have been foreseen by an ordinarily prudent person.

### III

"Under the provisions of Rule 56 of the West Virginia Rules of Civil Procedure, when the moving party presents depositions, interrogatories, affidavits or otherwise indicates there is no genuine issue as to any material fact, the resisting party to avoid summary judgment must present some evidence that the facts are in dispute." Syllabus Point 2, *Guthrie v. Northwestern Mutual Life Insurance Co.,* 158 W.Va. 1, 208 S.E.2d 60 (1974); Syllabus Point 4, *Burns v. City's Service Company,* 158 W.Va. 1059, 217 S.E.2d 56 (1975); Syllabus Point 2, *Hamon v. Akers,* 159 W.Va. 396, 222 S.E.2d 822 (1976).

The appellants in this case have failed to produce any evidence showing that there exists any genuine issue as to any material fact. Indeed, the appellants resisted the motion for summary judgment only by argument. They filed no counter-affidavit disputing any of Suburban Lanes' factual allegations. Accordingly, the appellees are entitled to judgment as a matter of law. The entry of summary judgment was therefore proper.

For the foregoing reasons, the order of the Circuit Court of Monongalia County entering summary judgment for Suburban Lanes, Inc. is affirmed.

MILLER, C.J., and McHUGH, McGRAW and BROTHERTON, JJ., concurs.