401 S.E.2d 908

**Cynthia R. DURM**

v.

**HECK'S, INC., a West Virginia Corporation; and New River Foodland, Inc., a West Virginia Corporation.**

**No. 19791.**

Supreme Court of Appeals of West Virginia.

Feb. 13, 1991.

Monty L. Preiser, Preiser Law Offices, Charleston, for Cynthia R. Durm.

Richard E. Rowe, Michael L. Keller, Goodwin & Goodwin, Charleston, for Heck's Inc. and New River Foodland, Inc.

WORKMAN, Justice:

Cynthia Durm appeals from an order of the Circuit Court of Raleigh County which granted summary judgment to New River Foodland ("Foodland") and dismissed Foodland with prejudice from a personal injury civil action initiated by Durm. Durm filed suit against Foodland and the remaining defendant, Heck's, as a result of a slip and fall incident which occurred on a sidewalk outside of a Foodland store located in a shopping center owned by Heck's. After reviewing the record in this case, we conclude that the circuit court correctly dismissed Foodland given the terms of the lease between Foodland and Heck's which required Heck's as the lessor to maintain the common areas. We also reject Foodland's contention that the order dismissing it from this case is an interlocutory order not subject to appeal.

On August 9, 1989, appellant slipped and fell on a section of uneven concrete after exiting the Foodland store at the Town and Country Shopping Center in Beckley, West Virginia. At the time of Durm's accident, the multi-store shopping center was owned by Heck's[1] who in turn leased the property to various commercial tenants. Under the terms of the subject lease agreement, Heck's as the landlord, had a mandatory obligation to "operate, equip, repair and maintain the Common Areas...." There is no dispute among the parties that the sidewalk on which appellant's accident occurred was an area designated by the lease as a common area. While the lease did impose a duty on Foodland as a tenant to remove any debris from the sidewalk area, Durm testified during her deposition that there was no debris on the sidewalk at the time of her accident.

■ Appellant does not dispute the applicability of the lease provision which re-quires Heck's as the landlord to maintain the common areas. Instead, Durm attempts to extend liability to the lessee Foodland under the theory that she was a business invitee of Foodland. *See Haddox v. Suburban Lanes, Inc.,* 176 W.Va. 744, 349 S.E.2d 910, 913–14 (1986). Appellant cites several cases for her theory that Foodland had a duty to use reasonable care to see that its premises were safe for the use of business invitees. *See id.,* 176 W.Va. at 747, 349 S.E.2d at 914; *Cowan v. One Hour Valet, Inc.,* 151 W.Va. 941, 951–54, 157 S.E.2d 843, 848–50 (1967); *Morgan v. Price,* 151 W.Va. 158, 163–64, 150 S.E.2d 897, 901 (1966). Not one of the cases cited by appellant supports her position that Foodland's duty to keep its premises safe for the use of business invitees extended to the sidewalks adjacent to its facility. While we certainly agree that a lessee has a duty to use reasonable care to see that the leased premises are safe for the use of business invitees, the accident which Durm sustained did not occur on the leased premises. Importantly, the slip and fall incident occurred outside of the leased premises on a sidewalk adjacent to the store.

■ In granting summary judgment to Foodland, the circuit court adopted the majority position of American tribunals that a lessee of a business establishment within a shopping center is not liable for injuries sustained by a patron on a portion of the premises not included in the leasehold when a provision of the lease requires the lessor to maintain the area in question. *See* Annotation, *Liability of Lessee of Particular Premises in Shopping Center for Injury to Patron from Condition on Portion of Premises Not Included in His Leasehold,* 48 A.L.R.3d 1163, 1165–66 (1973 & Supp.1990); *see also, Morris v. Scottsdale Mall Partners, Ltd.,* 523 N.E.2d 457, 458 (Ind.App.1988) (landlord liable for mall restaurant patron's injuries sustained on common area stairway since landlord retained control over all common areas under the lease); *Hall v. Quivira Square Dev.*

---

1. Although Heck's was involved in Chapter 11 bankruptcy proceedings at the time Durm instituted suit, appellant obtained leave to proceed against Heck's from the bankruptcy court. The reorganized Heck's corporation, which is now designated as Hallwood Industries, Inc., is currently an active participant in the underlying litigation.

*Co.,* 9 Kan.App.2d 243, 675 P.2d 931, 932–33 (1984) (shopping center tenant not liable for shopper's injuries incurred on parking lot outside of tenant's premises because shopping center landowner, by its lease, retained control of such common area and had duty to maintain area); *Underhill v. Shactman,* 337 Mass. 730, 733, 151 N.E.2d 287, 289–90 (1958). The rationale for the majority rule stems from the principle that liability should be assessed against the party having control of the premises. *See Underhill,* 337 Mass. at 733, 151 N.E.2d at 290.

While this Court has not previously addressed the issue of commercial tenant liability in the shopping center context, in cases dealing with premises liability we have generally adhered to the principle that liability results either from control of the subject area or from a specific wrongful act. *See Kesner v. Trenton,* 158 W.Va. 997, 1010–11, 216 S.E.2d 880, 888 (1975); *Morgan,* 150 S.E.2d at 901; *Puffer v. Hub Cigar Store, Inc.,* 140 W.Va. 327, 334–35, 84 S.E.2d 145, 151–52 (1954); *Hill v. Norton,* 74 W.Va. 428, 435–36, 82 S.E. 363, 366 (1914). Consistent with this Court's previous line of authority pertaining to premises liability, we hereby hold that where a lease agreement clearly sets forth that the lessor has the duty to maintain the non-leased common areas, thereby retaining the lessor's control over such areas, the lessee of a store located in a shopping center is not liable when a patron sustains injuries as a result of an accident which occurs on the non-leased common area. Since Heck's, by its lease, retained control over the common area where Durm's accident occurred and had the duty to maintain the sidewalk whereas Foodland had no such duty or control over the subject area, we hereby affirm the granting of summary judgment to Foodland.

Appellee contends that this appeal is improperly before this Court based on non-compliance with Rule 54(b) of the West Virginia Rules of Civil Procedure. Rule 54(b) states, in pertinent part, that

when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Appellee argues that the absence of language in the order granting summary judgment to Foodland and dismissing it with prejudice from the civil action which reflects "an express determination that there is no just reason for delay and ... an express direction for the entry of judgment" renders the judgment interlocutory rather than final in nature and accordingly prohibits this appeal.

To determine whether Foodland's appeal was prohibited by the circuit court's failure to include the Rule 54(b) language in the order granting summary judgment, it is instructive to review the history and purpose of its federal counterpart—Rule 54(b) of the Federal Rules of Civil Procedure. The text of the original federal rule 54(b) pertained only to multiple claims; no reference to multiple parties was included. 10 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2653 at 20 (1983) (hereinafter Wright & Miller). The need for Rule 54(b) was articulated by the United States Supreme Court in *Dickinson v. Petroleum Conversion Corp.,* 338 U.S. 507, 70 S.Ct. 322, 94 L.Ed. 299 (1950):

The liberalization of our practice to allow more issues and parties to be joined in one action and to expand the privilege of intervention by those not originally parties has increased the danger of hardship and denial of justice through delay if each issue must await the determination of all issues as to all parties before a final judgment can be had.

*Id.* at 511, 70 S.Ct. at 324.

The federal rule was amended in 1961 so that it also applied to "judgments for or against one or more but fewer than all the parties in a multiparty action." Wright & Miller, *supra,* at 26. The basic purpose of the amended Rule 54(b), as Wright & Miller explain,

is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until the final adjudication of the entire case by making an immediate appeal available....

The rule attempts to strike a balance between the undesirability of more than one appeal in a single action and the need for making review available in multiple-party or multiple-claim situations at a time that best serves the needs of the litigants.

*Id.* at 35–37.

■ Although the language of Rule 54(b) of the West Virginia Rules of Civil Procedure is identical to that of its federal counterpart, this Court has not interpreted the rule as strictly as the federal courts.[2] The reason for the difference in application as we explained in *Parsons v. Consolidated Gas Supply Corp.,* 163 W.Va. 464, 256 S.E.2d 758 (1979) is because

[t]he right of appeal to a federal circuit court is absolute; under our system, it is not. The consequence of this difference is that we can be less restrictive in interpreting the finality of an order, since upon preliminary review of the application for appeal we may reject it as being without merit.

*Id.,* 163 W.Va. at 469, 256 S.E.2d at 761. Applying this rationale to the appealability of a default judgment, this Court elaborated further on the need for a flexible interpretation of Rule 54(b):

we believe there is much to be gained by all parties to the litigation by having the validity of a default judgment for the failure to file a timely response tested by way of a direct appeal, rather than awaiting the final outcome of the litigation. Judicial economy in the trial of a case

dictates this result. A plaintiff armed with a default judgment, which may be of questionable value ... does not gain by having to wait until the entire case is tried before the default judgment can be appealed. The harm is even more aggravated in multi-defendant cases where counterclaims, cross-claims and third-party actions are present involving joint liability by the various parties.

*Id.*

■ The key to determining whether the order granting summary judgment and dismissing Foodland from this case with prejudice is a final order subject to appeal[3] is not whether the Rule 54(b) language is included in the order, but whether the order " 'approximat[es]' a final order in its 'nature and effect.' " *Taylor v. Miller,* 162 W.Va. 265, 269, 249 S.E.2d 191, 194 (1978) (quoting *Lloyd v. Kyle,* 26 W.Va. 534, 540 (1885)). Generally, an order qualifies as a final order when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945); *accord B.F. Goodrich Co. v. Grand River Dam Auth.,* 712 F.2d 453, 454 (10th Cir.1983). With the enactment of Rule 54(b), an order may be final prior to the ending of the entire litigation on its merits if the order resolves the litigation as to a claim or a party. *See* W.Va.R.Civ.P. 54(b); Fed.R. Civ.P. 54(b).

■ An examination of the order entered by the circuit court reveals that the court fully resolved the issue of Foodland's liability by ruling that "the claims brought by Plaintiff Cynthia R. Durm arising from her alleged accident ... may be asserted only against the party then owning the property, Heck's Inc." By making this ruling and dismissing Foodland with prejudice, there

---

**2.** *See, e.g., Thompson v. Betts,* 754 F.2d 1243 (5th Cir.1985) (appeal dismissed as interlocutory because no Rule 54(b) findings made by lower court). Note, however, that even the arguably rigid interpretation of the federal rule has an exception known as the *Cohen* collateral order doctrine. *See Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). An interlocutory order would be subject to appeal under this doctrine if it "(1) conclusively determines the disputed con-

troversy, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *Thompson,* 754 F.2d at 1246.

**3.** A statutory right to appeal arises in a civil case following the entry of a "final judgment, decree or order." W.Va.Code § 58–5–1(a) (1966).

can be no question that as to Foodland the litigation had ended. Accordingly, the order, if not technically final for absence of Rule 54(b) language indicating "no just reason for delay" and "directi[ng] ... entry of judgment," certainly is final in its "nature and effect." *Taylor*, 162 W.Va. at 268–69, 249 S.E.2d at 194.

"[T]o deny an immediate appeal from the disposition of an identifiable and separable portion of a ... [civil] action might result in an injustice." Wright & Miller, *supra*, at 20. In the interest of avoiding such potential injustice and in the interest of judicial economy, where an order granting summary judgment to a party completely disposes of any issues of liability as to that party, the absence of language prescribed by Rule 54(b) of the West Virginia Rules of Civil Procedure indicating "no just reason for delay" exists and "directi[ng] ... entry of judgment" will not render the order interlocutory and bar appeal provided that this Court can determine from the order that the trial court's ruling approximates a final order in its nature and effect. W.Va.R.Civ.P. 54(b). Since no further issue remained to be resolved regarding Foodland's liability, the circuit court's order must be viewed as a final order subject to appeal. *See* W.Va.Code § 58–5–1(a).

Based on the foregoing, the ruling of the Circuit Court of Raleigh County is hereby affirmed.

Affirmed.