508 S.E.2d 368

**Faye D. NUNLEY, Plaintiff,**

v.

**Clinton SALYERS and Mountaineer Gas Company, a West Virginia corporation, Defendant.**

**No. 24958.**

Supreme Court of Appeals of West Virginia.

Submitted June 3, 1998.

Decided July 16, 1998.

---

William C. Garrett, Gassaway, West Virginia, Attorney for Plaintiff.

Timothy M. Miller, James S. Chase, Robinson & McElwee, Charleston, West Virginia, Attorneys for Defendant.

PER CURIAM [1]:

This case is before the Court upon the petition of Clinton Salyers and Mountaineer

---

[1]. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992).

Gas Co., defendants in a suit in the Circuit Court of Clay County. In 1995, plaintiff, Faye Nunley, had commenced a civil suit in the Circuit Court of Clay County seeking compensation from defendants for property damage resulting from slippage caused by the improper installation of a natural gas pipeline. This action resulted in a verdict for the plaintiff. While appeal of the verdict in this action was pending, plaintiff brought a second suit seeking additional damages for damage occurring to her property during the pendency of the appeal, which the circuit court desired to consolidate with the first action. While the second case was being developed for trial, judgment was then satisfied in the first case. After being persuaded that the second suit did not allege an independent cause of action, the circuit court nevertheless ruled that a hearing in the first suit on post-judgement damages was needed. In recognition of the fact that there was no procedural or statutory authority for such a hearing, the circuit court proposed the submission of three certified questions, upon which it had ruled, for this Court's review. For the reasons enumerated below, we answer each of the three certified questions in the negative.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Faye D. Nunley (Nunley) is the owner of a tract of property along a bank of the Elk River in Procious, Clay County, West Virginia. In August 1993, Mountaineer Gas Co. (Mountaineer Gas) entered into a written "Dig and Backfill Agreement" to extend an existing gas line to various properties lying along the Elk River. Nunley's neighbors had requested gas service from Mountaineer Gas and this request was the impetus behind Mountaineer Gas entering into the agreement. Nunley's neighbors, organized under the leadership of Clinton Salyers, then extended an underground gas pipeline through Nunley's property pursuant to a right-of-way granted by Nunley to Mountaineer Gas. This line ran parallel to Elk River at distances between ten and forty feet from the bank. Upon completion, Mountaineer Gas accepted ownership of the pipeline.

In early 1995, high water levels, followed by a precipitous drop in water levels initiated by the U.S. Army Corps of Engineers, damaged the river embankment on Nunley's property. This was compounded by inadequate compaction of the soil by the pipeline installation crew, as water was thus able to enter the ditchline and weaken the bank, causing slippage.

On October 8, 1995, Nunley filed a complaint in the Circuit Court of Clay County alleging both contract and property damages for breach of the right-of-way agreement and of the Dig and Backfill Agreement and tort damages for intentional infliction of emotional distress and outrage. On December 14, 1995, following a jury trial, Nunley was awarded a verdict for her damages consisting of fifty thousand dollars in repair costs, thirty thousand dollars in annoyance and inconvenience costs, and pre-judgment interest. Subsequently, on March 15, 1996, a judgment order was entered by the circuit court. On March 26, 1996, Mountaineer Gas filed a motion for judgment notwithstanding the verdict, for a new trial or for alteration or amendment of the judgment, which was denied August 21, 1996. However, that same August 21, the circuit court granted the motion of Mountaineer Gas to stay enforcement of the judgment.

Subsequently, on December 17, 1996, Mountaineer Gas filed a petition for appeal asserting error by the circuit court in the admission of certain expert testimony and the award of pre-judgment interest. This Court, on March 12, 1997, denied this appeal petition, and on March 31, 1997, Mountaineer Gas paid Nunley ninety-nine thousand three hundred nineteen dollars and forty cents in satisfaction of the judgment. This included more than eleven thousand dollars of post-judgment interest. By Agreed Order entered June 19, 1997, the circuit court released the judgment lien.

On October 7, 1996, during the pendency of the appeal of the first action, Nunley had filed a second complaint (*Nunley II*) against Mountaineer Gas in the Circuit Court of Clay County, this time asking relief for property

damages which occurred to her property during the pendency of the appeal Mountaineer Gas had sought from the judgment in *Nunley I*. On April 28, 1997, circuit court heard oral argument on a motion to dismiss, then on May 21, 1997, ordered Nunley to provide Mountaineer Gas, by May 27, 1997, with an itemized list of damages to the property which did not exist and which were not foreseeable at the time of the verdict of December 14, 1995.

Nunley submitted a damage estimate, known as the Lyle Report, after the motion deadline, containing only increased construction costs for riverbank displacement occurring during the pendency of the appeal of Mountaineer Gas from the first verdict. On June 19, 1997, the circuit court held a hearing on a renewed motion to dismiss by Mountaineer Gas at which it found that since Nunley had not complied with the disclosure deadline and had made no repairs to the property since March 31, 1997, when the judgment from *Nunley I* had been satisfied, Nunley's additional damages were limited to those increased construction costs claimed in the Lyle Report.

By a motion filed on June 24, 1997, Nunley sought reconsideration of the order limiting her claimed damages. On July 18, 1997, the circuit court heard argument on this motion and upon the renewed motion to dismiss by Mountaineer Gas. The circuit court determined that Nunley had failed to assert an independent cause of action in *Nunley II*, but was entitled to a hearing on the value of post-judgment damages in *Nunley I*. The circuit court made this ruling even though Nunley was not, by her filing of *Nunley II*, attempting to alter or amend the judgment in *Nunley I* and despite the fact that the judgment in *Nunley I* had been released.

In recognition of the fact that no authority existed for this proposed hearing, three questions were certified to this Court on September 23, 1997, by the circuit court, which are as follows:

1. For the purpose of hearing a claim for post-judgment damages in a new civil action consolidated with the original civil action after it is ended, does Rule 42(a) of the West Virginia Rules of Civil Procedure grant the court discretionary authority to consolidate a pending civil action with a civil action in which a final judgment had already been entered?

2. Based upon the allegations in *Nunley I*, has Nunley alleged an independent cause of action upon which she may be entitled to maintain a subsequent action for damages, following a jury verdict in *Nunley I*?

3. Is Nunley entitled to a post-judgment hearing on damages in *Nunley I*, consolidated with *Nunley II*, for any subsequent damage to her property following the verdict returned on December 14, 1995, in *Nunley I* and prior to payment of the judgment on March 31, 1997? The circuit court held in the affirmative.

The circuit court answered questions one and three in the affirmative and question two in the negative. For the reasons enumerated below, this Court agrees with the circuit court's answer to Certified Question Two, but disagrees with the answers of the circuit court to Certified Questions One and Three.

## II.

### STANDARD OF REVIEW

The standard of review to be applied in reviewing a certified question was recently set forth in Syllabus Point One of *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996), wherein we held that "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo*."

## III.

### DISCUSSION

#### CERTIFIED QUESTION ONE

With regard to Certified Question One, the test for circuit courts to apply in deciding consolidation issues under *W.Va. R.Civ.P.* 42(a) has been clearly set out by this Court. "The trial court when exercising its discretion in deciding consolidation issues under *W.Va.R.Civ.P.* 42(a), should consider the following factors: (1) whether the risks of prejudice and possible confusion outweigh

the considerations of judicial dispatch and economy; (2) what the burden would be on the parties, witnesses, and available judicial resources posed by multiple lawsuits; (3) the length of time required to conclude multiple lawsuits as compared to the time required to conclude a single lawsuit; and (4) the relative expense to conclude all of the single-trial, multiple-trial alternatives. When the trial court concludes in the exercise of its discretion whether to grant or deny consolidation, it should set forth in its order granting or denying consolidation sufficient grounds to establish for review why consolidation would or would not promote judicial economy and convenience of the parties, and avoid prejudice and confusion." Syllabus point 2, *State ex rel. Appalachian Power v. Ranson,* 190 W.Va. 429, 438 S.E.2d 609 (1993). See also *State ex rel. Appalachian Power v. Mac-Queen,* 198 W.Va. 1, 479 S.E.2d 300 (1996). Applying the requirements of this test, we examine whether the lower court has abused its discretion by consolidation of these cases.

■ Under the guidance of this test, we arrive at the conclusion that the circuit court answered Certified Question 1 erroneously. Rule 42(a) of the West Virginia Rules of Civil Procedure states that "[w]hen actions involving a common question of law or fact are *pending before the court,* it may order a joint hearing or trial of any or all the matters in issue in the actions." *W.Va.R.Civ.P.* 42(a) (emphasis added). West Virginia law recognizes that "[t]he pendency of a suit is traditionally defined as beginning when the petition or complaint is filed and concluding when a final order is entered disposing of the suit." Syllabus Point 2, *Baldwin v. Moses,* 182 W.Va. 120, 386 S.E.2d 487 (1989). "Generally, an order qualifies as a final order when it 'ends the litigation on the merits and leaves nothing for the court but the execution of the judgment.'" *Durm v. Heck's Inc.,* 184 W.Va. 562, 566, 401 S.E.2d 908, 912 (1991) quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). Since a judgment order was entered by the circuit court on March 15, 1996, in *Nunley I,* under the traditional understanding of the meaning of "pendency" in this state, *Nunley I* was not still pending before the circuit court as of July 18, 1997. As it was not still pending, it was therefore improper to consolidate it with *Nunley II* for any purpose whatsoever. Thus, we answer Certified Question One in the negative.

## CERTIFIED QUESTION TWO

This Court, reviewing the dismissal of the *Nunley II* complaint for failure to allege an independent cause of action against Mountaineer Gas, finds that the dismissal is proper and, therefore, the circuit court correctly answered certified question No. 2 in the negative. We have noted that, under the doctrine of *res judicata,* all issues arising from a particular controversy with a particular party should be tried at one trial and not be litigated piecemeal.

■ This is the underlying rationale behind the consolidation provisions contained in Rule 42(a) of the West Virginia Rules of Civil Procedure. As Judge Snyder noted over a century ago, " '[a]n adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action. It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the *status* of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res judicata.'* Syllabus Point 1, *Sayre's Adm'r v. Harpold et al.,* 33 W.Va. 553, 11 S.E. 16 (1890)." Syllabus Point 2, *Downing v. Ashley,* 193 W.Va. 77, 454 S.E.2d 371 (1994).

In *N.C. v. W.R.C.,* 173 W.Va. 434, 317 S.E.2d 793 (1984), this Court addressed what constituted an independent cause of action under rule 60(b) of the West Virginia Rules of Civil Procedure. The Court concluded:

The definition of an independent action, as contemplated by *W.Va.R.Civ.P. 60(b),* is an equitable action that does not relitigate the issues of the final judgment, order or proceeding from which relief is sought and is one that is limited to special circumstances.

Syllabus Point 2, *N.C. v. W.R.C., id.* Although this syllabus point dealt with the Rule 60(b) definition, this Court believes it contains the essence of the definition of an independent cause of action, even in a broader context, that being, whether additional litigation will require relitigation of an issue which has previously been finally adjudicated.

■ According to our law, "for the prosecution of a lawsuit to be barred on the basis of *res judicata,* three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action." Syllabus Point 4, *Blake v. Charleston Area Medical Center,* 201 W.Va. 469, 498 S.E.2d 41 (1997).

■ On December 14, 1995, Nunley received a verdict which was final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action. *Sayre's Adm'r, supra* and *Downing, supra.* Here, the identical parties are involved that were involved in *Nunley 1.* The increased construction costs for repair of the original damage to the plaintiff, as shown on the report of the plaintiff's expert, were correctly determined by the trial court to be simply a part of the original damage. Therefore, pursuant to the prior holdings of this court, it is proper to hold this action to be barred by *res judicata* and not a new, independent cause of action.

We therefore, answer Question Two in the negative.

## CERTIFIED QUESTION THREE

This Court has long held to the doctrine that all issues arising from a particular controversy with a particular party should be tried at one trial. Moreover, this Court has set forth standards which should indicate the lengths to which it will go to hold a final judgment sacrosanct. Here, there is no question that *Nunley I* was a final judgment by the time *Nunley II* was filed. Nunley did not even file *Nunley II* until October 8, 1996, fully seven months after the judgment order in *Nunley I* had been filed. Even were this not enough, on March 31, 1997, Mountaineer Gas paid Nunley ninety-nine thousand three hundred nineteen dollars and forty cents in satisfaction of the judgment and by Agreed Order entered June 19, 1997, the circuit court released the judgment lien. Any proceedings after that date with regard to *Nunley I* should have been clearly improper to all concerned as it has been the position of this Court for many years that "[t]he payment of a judgment by any of the judgment debtors extinguishes the judgment at law[.]" Syllabus Point 1, *Greenbrier Valley Bank v. Holt,* 114 W.Va. 363, 171 S.E. 906 (1933) quoting *Grizzle v. Fletcher,* 127 Va. 663, 666, 105 S.E. 457, 458 (1920). On July 18, 1997, the circuit court determined that, although Nunley had failed to assert an independent cause of action in *Nunley II,* the plaintiff was entitled to a hearing on the value of post-judgment damages in *Nunley I* accruing between the end of trial and the payment of the verdict. This is contrary to this Court's position, as stated by Chief Justice Brotherton, that "... the legislature intended that post-judgement interest be available to compensate an individual for the delay between the judgment and the receipt of actual payment...." *Adams v. Nissan Motor Corp. in U.S.A.,* 182 W.Va. 234, 241, 387 S.E.2d 288, 295 (1989).

■ Therefore, we hold that no post-judgment hearing may be held for damages accruing to Nunley during the pendency of her appeal of *Nunley I.* Such an act violates both the doctrine of *res judicata* and the well-established public policy of this Court that a party may not relitigate a controversy which has been tried to judgment. In light of our finding, we therefore answer Certified Question Three in the negative.

## IV.

## CONCLUSION

For the reasons enumerated above, we reiterate that the pendency of a suit is tradi-

tionally defined as concluding when a final order is entered and an adjudication by a court having proper jurisdiction is final and conclusive as to every matter which the parties might have litigated at that trial. These factors, in combination with the legislative intent that post-judgment interest be the only compensation for an individual for the damages accruing between the time of the judgment and the receipt of actual payment thus constitute a bar to the kind of proceeding contemplated by the circuit court. Furthermore, no post-judgment hearing be should held for damages accruing during the pendency of the appeal of an action which has been adjudicated. Therefore, Questions Two and Three certified from the Circuit Court of Clay County are answered in the negative, and this matter is remanded to that Court for further proceedings in accordance herewith.

Certified Questions Answered.

Workman, J., filed separate opinion concurring in part and dissenting in part.