**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Mandy Keen and William D. Keen, II,**
**Plaintiffs Below, Petitioners**

**vs.)  No. 21-0144** (Raleigh County 20-C-106-B)

**Billie Coleman,**
**Defendant Below, Respondent**

**MEMORANDUM DECISION**

Petitioners Mandy Keen and William D. Keen II, by counsel Christopher Michael Davis, appeal the Circuit Court of Raleigh County's January 27, 2021, order granting respondent's motion to dismiss petitioners' complaints on the basis that respondent owed no duty to petitioners to fortify her building against a vehicle driving through it or to prevent the driver of that vehicle from operating her vehicle. Respondent Billie Coleman, by counsel Christopher D. Negley and Caleb B. David, filed a response. Petitioners filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Respondent owns a building (the "building") on State Route 16 in Sophia, West Virginia. The building used to house a volunteer fire department, but at the time of the events leading to the filing of the underlying litigation, it was being used as a bingo hall. On May 10, 2018, Peggy Griffin had been playing bingo in the building when she received a phone call that left her visibly upset. Ms. Griffin left the building, pulled out of the parking lot, and attempted to make a left-hand turn onto Route 16 when she collided with another vehicle. Ms. Griffin then lost control of her vehicle, struck another vehicle in the building's parking lot, and continued through the building's garage doors, injuring ten patrons (including Petitioner Mandy Keen) and killing one (Petitioner William Keen's wife, Linda). Lawsuits ensued, predicated generally on respondent's alleged negligence in failing to construct fortifying structures to prevent vehicles from crashing into the

1

building, in placing the bingo tables close to the unprotected garage doors, and in failing to prevent Ms. Griffin from operating her vehicle.[1]

The first six plaintiffs to file suit against respondent (the "Froble plaintiffs") were represented by attorney Michael Froble. These lawsuits (the "initial six") were filed in March of 2020 and assigned to various Raleigh County Circuit Court judges. The first lawsuit filed was assigned to Raleigh County Circuit Court Judge Robert A. Burnside Jr. A short time later, in April of 2020, three additional plaintiffs (the "Hayden plaintiffs"), represented by attorney Gerald Hayden, sued respondent, and these suits were also assigned to different Raleigh County Circuit Court judges. Petitioners, the last to sue respondent, were represented by Christopher Michael Davis in filing their individual lawsuits in May of 2020. Petitioner Mandy Keen's suit was assigned to Judge Burnside, and Petitioner William Keen's suit was assigned to Raleigh County Circuit Court Judge Andrew Dimlich.

On May 11, 2020, the initial six were consolidated. Respondent moved to dismiss the initial six, and following oral argument held on June 24, 2020, the court granted respondent's motion. The court's dismissal order was entered on September 23, 2020, but filed nunc pro tunc to July 6, 2020. On August 12, 2020—after the court had dismissed the initial six orally at the June 24, 2020, hearing but before entry of the dismissal order—the Froble plaintiffs filed a motion for relief from judgment under Rule 60(b) of the West Virginia Rules of Civil Procedure. Respondent responded.

Respondent also moved to dismiss the Hayden plaintiffs' and petitioners' respective lawsuits. Following oral argument in Petitioner William Keen's case, Judge Dimlich denied respondent's motion to dismiss on September 22, 2020. Then, on November 12, 2020, Petitioner William Keen's case was administratively transferred to Judge Burnside's docket.[2]

On the same day that Judge Dimlich denied respondent's motion to dismiss Petitioner William Keen's case, respondent filed separate motions to consolidate the Hayden plaintiffs' lawsuits and petitioners' lawsuits with the previously consolidated initial six. And on the same day that Petitioner William Keen's case was administratively transferred to Judge Burnside's docket, Judge Burnside consolidated petitioners' respective cases and the Hayden plaintiffs' respective cases with the initial six. The court found that petitioners' and the Hayden plaintiffs' civil actions arose from the "same event as the previously consolidated cases and thereby involve the same issues of fact and law."

All parties appeared before Judge Burnside on December 7, 2020, for a hearing on respondent's motion to dismiss the later-consolidated actions filed by petitioners and the Hayden

---

[1] It was alleged that respondent or her agents allowed Ms. Griffin to operate her vehicle despite her inability to do so safely given her emotional state and despite knowing that Ms. Griffin did not possess a valid driver's license.

[2] At a later hearing, Judge Burnside explained that "Judge Dimlich's order [denying respondent's motion to dismiss] was entered at a time when these matters were subject to being consolidated. For some reason that hadn't gotten into the consolidation group and was transferred to me because of the consolidation."

plaintiffs. The court granted the motion, concluding that respondent owed no legal duty to fortify her building.[3] In reaching this conclusion, the court found that Ms. Griffin's actions of leaving respondent's parking lot, striking a vehicle in the roadway, losing control, making a U-turn, striking a parked vehicle, and then driving into the building were "only remotely or slightly possible," not "probable" or "likely." The court also addressed policy considerations and found that requiring business owners to construct fortifications to ensure that motor vehicles crashing through their buildings do not injure patrons would place an unreasonable burden on those building owners "due to the remote and unlikely nature of this occurrence." Finally, the court found that "[a]bsent any allegation that [Ms.] Griffin was intoxicated (and [petitioners] make no such allegation), these facts, i.e., that [Ms.] Griffin was visibly upset and/or did not have a proper driver's license, do not rise to the level that the subsequent event was 'probable and likely to happen,'" so respondent also owed no legal duty to petitioners to prevent Ms. Griffin from operating a motor vehicle.[4] It is from the court's January 27, 2021, order granting respondent's motion to dismiss that petitioners appeal.

In petitioners' first of three assignments of error, they contend that the court's consolidation of their lawsuits with the initial six was improper. Petitioners state that, as a final order is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," *Durm v. Heck's Inc.*, 184 W. Va. 562, 566, 401 S.E.2d 908, 912 (1991) (citation omitted), the court's September 23, 2020, dismissal order constituted a final order, so there was no case pending with which the court could have consolidated petitioners' cases. *See Nunley v. Salyers*, 203 W. Va. 431, 436, 508 S.E.2d 368, 373 (1998) ("Since a judgment order was entered . . . in *Nunley I*, under the traditional understanding of the meaning of 'pendency' in this state, *Nunley I* was not still pending . . . ."). Accordingly, petitioners assert that the court's order "transferring and consolidating [p]etitioners' cases with the dismissed underlying case must be reversed and [p]etitioners' cases reinstated—[Petitioner William] Keen's case with Judge Dimlich and [Petitioner Mandy] Keen's case with Judge Burnside."

We begin by observing that, irrespective of whether consolidation with the previously dismissed suits was proper, petitioners have not demonstrated that they are entitled to have their respective lawsuits reinstated before different judges. Where suits arising out of the same occurrence are filed in "different courts," Rule 42(b) of the West Virginia Rules of Civil Procedure *mandates* that all such suits be transferred to the same court: "When two or more actions arising out of the same transaction or occurrence are pending before different courts[,] . . . the court in which the first such action was commenced *shall* order all the actions transferred to it or any other court in which any such action is pending." (Emphasis added.) The transfer is mandatory to promote efficiency and to avoid the risk of inconsistent judgments. *See State ex rel. Bank of Ripley v. Thompson*, 149 W. Va. 183, 189, 139 S.E.2d 267, 271 (1964) ("The reason for such Rules relating to the transfer . . . of actions is to avoid unnecessary cost or delay and to avoid the necessity

---

[3] The court stated that, despite the earlier denial of respondent's motion to dismiss Petitioner William Keen's suit by Judge Dimlich, it was considering that motion "because it is necessary that these consolidated actions be addressed consistently."

[4] The court further observed that petitioners identified no authority under which respondent could prevent Ms. Griffin from driving her vehicle.

3

of two trials instead of one, therefore avoiding the possibility of judgments in direct conflict."). Generally, however, Rule 42(b) has been applied to suits filed in different counties. *See, e.g.*, *Hanlon v. Joy Mfg. Co.*, 187 W. Va. 280, 418 S.E.2d 594 (1992); *Bank of Ripley*, 149 W. Va. 183, 139 S.E.2d 267. But we need not determine here whether suits filed before different judges in the same county fall within the rule's purview because courts also possess "inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction." Syl. Pt. 3, in part, *Shields v. Romine*, 122 W. Va. 639, 13 S.E.2d 16 (1940) (citation omitted). Therefore, Judge Burnside was vested with the inherent authority to do that which was necessary to reasonably administer justice, including order the transfer of Petitioner William Keen's case to his docket for the consistent and orderly administration of all cases arising from the subject occurrence.[5] Indeed, the same objectives underlying the mandatory transfer directed by Rule 42(b) are in need of satisfaction where cases arising from the same occurrence are filed before different judges within the same county. Accordingly, we find no error in the transfer of Petitioner William Keen's suit to Judge Burnside's docket.

Next, although it is unclear that petitioners are actually challenging consolidation in view of the relief sought, we nevertheless find no reversible error in the court's consolidation of petitioners' lawsuits with the initial six. Rule 42(a) of the West Virginia Rules of Civil Procedure specifies that "[w]hen actions involving a common question of law or fact *are pending before the court*, . . . it may order all the actions consolidated." (Emphasis added.) The crux of petitioners' argument is that the initial six were not "pending," as specified in Rule 42(a), so the court could not consolidate petitioners' suits with them. Petitioners disagree that the Froble plaintiffs' filing of their Rule 60(b) motion caused the initial six to remain pending, but we need not resolve that question here because, even if the filing of that motion did not cause the initial six to remain pending, any error in subsequent consolidation with the initial six was harmless.

Rule 61 of the West Virginia Rules of Civil Procedure directs that "any error or defect in the proceeding which does not affect the substantial rights of the parties" must be disregarded. Similarly, we stated in Syllabus Point 2 of *Boggs v. Settle* that "[o]n appeal of a case involving an action covered by the Rules of Civil Procedure, this Court will disregard and regard as harmless any error, defect or irregularity in the proceedings in the trial court which does not affect the substantial rights of the parties." 150 W. Va. 330, 145 S.E.2d 446 (1965). Petitioners argue that Petitioner William Keen "suffered tremendous prejudice" because respondent's motion to dismiss had already been denied as to him, but following "the improper consolidation," it was granted, and Petitioner William Keen was no longer able to proceed with his case. But as explained below, respondent owed no duty to petitioners, so it cannot be said that he had any right to proceed with his lawsuit against her. And, in any event, the *consolidation* did not cause dismissal of Petitioner William Keen's lawsuit. We therefore find that, even if consolidation was improper, the error was harmless.

Petitioners next claim error in Judge Burnside's dismissal of Petitioner William Keen's complaint where Judge Dimlich previously denied respondent's motion to dismiss that complaint.

---

[5] Petitioner Mandy Keen's suit was already pending before Judge Burnside; only Petitioner William Keen's suit was transferred.

4

Petitioners maintain that Judge Dimlich's ruling became the law of the case and that Judge Burnside was prohibited from considering respondent's motion anew as to Petitioner William Keen. Citing *State ex rel. TermNet Merchant Services, Inc. v. Jordan*, petitioners assert that "[t]he law of the case doctrine provides that a prior decision in a case is binding upon subsequent stages of litigation between the parties in order to promote finality," 217 W. Va. 696, 702 n.14, 619 S.E.2d 209, 215 n.14 (2005), and they contend that the doctrine applies to a transferee court unless the transferee court is "convinced that [the prior holding] is clearly erroneous and would work a manifest injustice." *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983) (citation omitted). Though respondent claims that the doctrine operates "top down," not "sideways," petitioners assert that their interpretation of the law of the case doctrine—that it operates between transferor and transferee courts rather than only between appellate and lower courts—"is echoed by other jurisdictions around the country, including the Sixth Circuit."

In the language of *TermNet* cited by petitioners, the Court directs readers to *State ex rel. Frazier & Oxley v. Cummings*, 214 W. Va. 802, 591 S.E.2d 728 (2003), "[f]or a thorough discussion of the law of the case doctrine." *TermNet*, 217 W. Va. at 702 n.14, 619 S.E.2d at 215 n.14. In *Frazier & Oxley*, we explained that

> [t]he law of the case doctrine "generally prohibits reconsideration of issues which have been *decided in a prior appeal in the same case*, provided that there has been no material changes in the facts since the prior appeal, such issues may not be relitigated in the trial court or re-examined in a second appeal."

214 W. Va. at 808, 591 S.E.2d at 734 (emphasis added) (quoting 5 Am. Jur. 2d *Appellate Review* § 605 at 300 (1995)). We further highlighted our prior holding that "[t]he general rule is that when a question has been definitively determined *by this Court* its decision is conclusive on parties, privies and courts, including this Court, upon a second appeal and it is regarded as the law of the case." *Id.* (emphasis added) (citation omitted).

Nevertheless, we need not stake out the precise contours of the doctrine because, under the construction of the doctrine for which petitioners advocate, there exists an exception to the doctrine's application where the prior holding is erroneous and would work a manifest injustice. *See also Frazier & Oxley*, 214 W. Va. at 808, 812 n.14, 591 S.E.2d at 734, 738 n.14 (noting an exception to the mandate rule, which is "a special aspect of the law of the case doctrine," upon "a showing that a blatant error in the prior decision will result in a manifest injustice if uncorrected"). Also, the Supreme Court of the United States has stated that the law of the case doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, [it is] not a limit to their power." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (citation omitted). While reiterating that courts should revisit a decision only in "extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice,'" the Court still made clear that "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance." *Id.* (citing *Arizona*, 460 U.S. at 618, n.8).

In *In re Upjohn Co. Antibiotic Cleocin Products Liability Litigation*, the Sixth Circuit, too, stated that the law of the case doctrine "is not an inexorable command" and there rejected the argument that the law of the case doctrine prohibited a transferee court from modifying a prior ruling where the prior ruling was interlocutory and would, therefore, be subject to modification by

5

the transferor court. 664 F.2d 114, 120 (6th Cir. 1981) (citation omitted). The flexibility in applying the doctrine comports with our holding that, "[a]s long as a circuit court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." Syl. Pt. 4, *Hubbard v. State Farm Indemnity Co.*, 213 W. Va. 542, 584 S.E.2d 176 (2003). "[O]rdinarily the denial of a motion to dismiss is an interlocutory order . . . ." *Ewing v. Bd. of Educ. of Cnty. of Summers*, 202 W. Va. 228, 235, 503 S.E.2d 541, 548 (1998).

So, assuming the applicability of the law of the case doctrine, under *Hubbard* and the aforementioned exception to the doctrine, Judge Burnside was not restrained from revisiting—and subsequently granting—the motion to dismiss Petitioner William Keen's complaint. As has already been made clear and is explained below, respondent does not owe the duties Petitioner William Keen alleges are owed. Because no duties are owed, to allow him to maintain suit against respondent would be clearly erroneous and work a manifest injustice, so the court did not err in revisiting respondent's motion to dismiss Petitioner William Keen's complaint.

Finally, we reach petitioners' claim that the court erred in granting respondent's motion to dismiss petitioners' complaints. Petitioners maintain that respondent owed a duty to petitioners, which was violated by "inviting [p]etitioners into an unsafe bingo hall facility that was devoid of barriers in close proximity to where motor vehicles were passing by." Petitioners highlight that respondent controlled the seating within the bingo hall and sat them "in close proximity to oncoming traffic with no barriers to safeguard them." Petitioners argue that "it is impossible to conclude" that there are no facts upon which a duty of care can be established, and they argue further that discovery may reveal that respondent violated a statute, safety code, or regulation, thereby supplying prima facie evidence of negligence.[6] *See* Syl. Pt. 1, in part, *Anderson v. Moulder*, 183 W. Va. 77, 394 S.E.2d 61 (1990) ("Violation of a statute is *prima facie* evidence of negligence.").

We review de novo a circuit court's order granting a motion to dismiss. Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995). "[A] motion to dismiss should be granted only where 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Blankenship v. Ethicon, Inc.*, 221 W. Va. 700, 704, 656 S.E.2d 451, 455 (2007) (citation omitted).

Dispensing first with petitioners' arguments that their complaints are salvageable because discovery could reveal that respondent violated a statute, safety code, or regulation, we note that "complaints must minimally place a defendant on notice of the claim against it," and they must "be intelligibly sufficient for a circuit court or an opposing party to understand whether a valid claim is alleged and, if so, *what it is*." *Malone v. Potomac Highlights Airport Auth.*, 237 W. Va. 235, 240, 786 S.E.2d 594, 599 (2015) (citation omitted). Petitioners' complaints contained neither a claim for negligence per se nor allegations that respondent violated a statute or regulation.

---

[6] Although petitioners argue generally that they alleged facts upon which a duty of care can be established, which facts include those regarding whether Ms. Griffin should have been prevented from leaving the building, they do not make specific arguments concerning the existence of that alleged duty.

Consequently, petitioners cannot demonstrate error in the court's dismissal on the ground that discovery might reveal facts to support a claim they never pled.

With respect to whether petitioners' complaints pled a duty that respondent, as a matter of law, owed, it is well-recognized that "to establish a *prima facie* case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken." Syl. Pt. 3, in part, *Aikens v. Debow*, 208 W. Va. 486, 541 S.E.2d 576 (2000) (citations omitted). Determining the existence of a duty "is not a factual question for the jury." *Id.* at 488, 541 S.E.2d at 578, Syl. Pt. 5, in part. Rather, that determination "must be rendered by the court as a matter of law." *Id.* In determining whether a duty exists, the base consideration is foreseeability:

> The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result.

*Id.* at 489, 541 S.E.2d at 579, Syl. Pt. 8 (citation omitted). But, "[b]eyond the question of foreseeability, the existence of duty also involves policy considerations underlying the core issue of the scope of the legal system's protection." *Robertson v. LeMaster*, 171 W. Va. 607, 612, 301 S.E.2d 563, 568 (1983). These policy considerations include "the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant." *Id.* (citations omitted).

In our de novo review, we find no error in the circuit court's conclusion that respondent owed no duty to petitioners to protect them from vehicles driving through the building. We also find no error in the court's conclusion that respondent did not owe petitioners a duty to prevent Ms. Griffin from driving when she was visibly upset and/or did not have a driver's license. Ms. Griffin's actions in driving into the bingo hall could not reasonably have been anticipated, and "[a] person is not liable for damages which result from an event which was not expected and could not reasonably have been anticipated by an ordinarily prudent person." Syl. Pt. 6, *Puffer v. Cigar Hub Store*, 140 W. Va. 327, 84 S.E.2d 145 (1954), *overruled on other grounds by Mallet v. Pickens*, 206 W. Va. 145, 522 S.E.2d 436 (1999). Nor is "[t]he owner or the occupant of premises used for business purposes . . . an insurer of the safety of an invited person present on such premises, and if such owner or occupant is not guilty of negligence or willful or wanton misconduct and no nuisance exists, he is not liable for injuries there sustained by such invited person." *Id.* at 327, 845 S.E.2d at 145, Syl. Pt. 3. Rather, the duty owed is one of "reasonable care under the circumstances," Syl. Pt. 6, in part, *Gable v. Gable*, 245 W. Va. 213, 858 S.E.2d 838 (2021) (citation omitted), and the "[f]ailure to take precautionary measures to prevent an injury which if taken would have prevented the injury is not negligence if the injury could not reasonably have been anticipated and would not have happened if unusual circumstances had not occurred." *Haddox v. Suburban Lanes, Inc.*, 176 W. Va. 744, 748, 349 S.2d 910, 914 (1986) (citation omitted). Under these long-held and well-established principles, the conclusion that respondent owes no legal duty to protect invitees from the remote and unforeseeable possibility that a driver will breach the building's exterior and harm the invitees inside, even where that driver is alleged to have been upset and without a driver's license, is unavoidable. To hold otherwise would render property

7

owners insurers of the safety of their invitees. Thus, because respondent does not owe the duties claimed by petitioners, they can prove no set of facts in support of their claims that would entitle them to relief, and the court did not err in dismissing their complaints.

We observe, lastly, that the majority of courts that have considered similar facts have reached the same conclusion. For instance, in *Eckerd-Walton, Inc. v. Adams*, the plaintiff was injured inside a store near the service counter when an individual drove through the storefront and pinned the plaintiff against the counter. 190 S.E.2d 490, 491 (Ga. Ct. App. 1972). The plaintiff alleged that the store should have anticipated that a negligent motorist would drive through the store and either not placed counter stools in that area of the store or built a barricade to make that type of negligence impossible. *Id.* at 492. Noting that "negligence consists in not foreseeing and guarding against that which is probable and likely to happen, not against that which is only remotely and slightly possible," the court concluded that "[t]he particular act of negligence [the store] is called upon . . . to guard against has . . . been held so remote and improbable as not reasonably to be anticipated by a merchant in the exercise of ordinary care." *Id.; see also Carter v. Gambulous*, 748 P.2d 1008, 1009 (Okla. Civ. App. 1987) (finding that it was unforeseeable that an intoxicated driver would crash into a store window and injure a shopper inside, so the store owner owed no duty to fortify the store); *Carpenter v. Stop-N-Go Mkts. of Ga., Inc.*, 512 So.2d 708, 709 (1987) (adopting the "majority view" in holding that there is "no duty owed by a convenience store owner, to persons inside the store, to erect barriers in order to prevent vehicles from driving through the store's plate glass window").

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 31, 2022

**CONCURRED IN BY:**

Acting Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn

**DISQUALIFIED:**

Chief Justice John A. Hutchison
Justice William R. Wooton

8