STATE *ex rel.* DAILY MAIL PUBLISHING CO., *etc., et al.*

*v.*

THE HON. ROBERT K. SMITH, *Judge, et al., etc.*

(NO. 14158)

DON MARSH, *et al.*

THE DAILY GAZETTE CO., *etc., et al.*

*v.*

HON. ROBERT K. SMITH, *Judge, etc.*

(NO. 14180)

Decided June 27, 1978.

*Jackson, Kelly, Holt & O'Farrell, F. Paul Chambers and Michael A. Albert, and W. Henry Jernigan, Jr.,* for relators-Daily Mail Pub. Co., et al.

*DiTrapano, Mitchell, Lawson & Field, Rudolph L. Di-Trapano, E. Joseph Buffa, Jr., and Larry R. Ellis* for relators-Don Marsh, et al.

*Cletus B. Hanley, Prosecuting Attorney,* for respondents.

*Paul Raymond Stone* amicus curiae Juvenile Defender Attorney Program.

NEELY, JUSTICE:

These two cases, which have been consolidated for decision, both present a conceptionally indisguisable permutation of a classic First Amendment, freedom-of-the press issue concerning prior restraint on publication which the United States Supreme Court has addressed numerous times in the last ten years. These original jurisdiction proceedings seek to prohibit the respondent judges of the Circuit Court of Kanawha County, and the Prosecuting Attorney of Kanawha County from prosecuting petitioners under *W.Va. Code,* 49-7-3 [1941] which forbids any newspaper from publishing the name of a child in connection with any juvenile proceeding without the permission of the trial court. The petitioners are the *Charleston Gazette;* its Publisher, W. E. Chilton, III; its Editor, Don Marsh; one of its reporters, Leslie H. Milam; *The Charleston Daily Mail;* its Editor, Jack Maurice; and one of its reporters, Mary Schnack.

On 10 February 1978 both newspapers printed stories naming a juvenile charged in the fatal shooting of a student at a local junior high school. The respondent prosecuting attorney sought and obtained indictments against petitioners on 1 March 1978 for knowingly and unlawfully violating *Code,* 49-7-3 [1941]. That statute provides:

> Any evidence given in any cause or proceeding under this chapter, or any order, judgment or finding therein, or any adjudication upon the status of juvenile delinquent heretofore made or rendered, shall not in any civil, criminal or other cause or proceeding whatever in any court, be lawful or proper evidence against such child for any purpose whatsoever except in subsequent cases under this chapter involving the same child; nor shall the name of any child, in connec-

tion with any proceedings under this chapter, be published in any newspaper without a written order of the court; nor shall any such adjudication upon the status of any child by a juvenile court operate to impose any of the civil disabilities ordinarily imposed by conviction, nor shall any child be deemed a criminal by reason of such adjudication, nor shall such adjudication be deemed a conviction, nor shall any such adjudication operate to disqualify a child in any future civil service examination, appointment, or application.

Petitioners urge that *W.Va. Code*, 49-7-3 [1941] violates *West Virginia Constitution*, art. 3, § 7, which is the state counterpart to the First Amendment to the *Constitution of the United States*. While ordinarily a constitutional question would be decided on state grounds in the first instance, thus avoiding a needless federal question, we find that in this instance it is better practice to rely upon a well developed body of federal law rather than an essentially nonexistent body of state law. Our regular use of state constitutional provisions is grounded in their capacity to be broader, in the sense of being more protective of individual rights, than the federal constitution; however, with regard to the First Amendment it would be difficult to find a more expansive interpretation of freedom of the press than that developed by the Supreme Court of the United States. Even if we were to hypothesize that a broader guaranty might one day be necessary, it would be unwise to formulate new rules in the context of cases whose facts do not compel a minute inquiry into the sagacity of the new rules urged upon us. Furthermore, it is more serviceable to use federal law because of the interrelationship among all of the various news media, some of which are primarily governed by federal law, thereby providing a uniform resolution of these issues throughout the United States.

Recent cases demonstrate that the United States Supreme Court is concerned with all cases involving the First Amendment and that they are regularly respon-

sive to the need for daily supervision of this area of the law throughout the United States. Accordingly in the interest of comprehensibility and uniformity we decide this case according to crystal clear principles of federal law concerning freedom of the press.

## I

The preeminent rule with regard to prior restraint on free speech has recently been articulated by the Chief Justice of the United States in *Nebraska Press Assn. v. Stuart*, 427 U.S. 539 (1976), citing with approval *Organization For A Better Austin v. Keefe*, 402 U.S. 415 (1971):

> Any prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity.

An exegesis of the reasoning of the Supreme Court of the United States with regard to the issue of prior restraint is hardly appropriate here since that Court has done it in substantial length themselves in numerous cases involving this very issue.[1]

---

[1] *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975) (denying use of municipal facilities for a play production based on city board's judgment of content is an impermissible prior restraint); *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376 (1973) (court order barring newspaper from referring to sex in employment headings not prior restraint endangering free speech); *Shuttlesworth v. City of Birmingham*, 394 U.S. 147 (1969) (overbroad parade permit requirements unconstitutional); *Carroll v. Princess Anne*, 393 U.S. 175 (1968) (injunction against a public meeting, granted without a hearing, constitutes an unconstitutional prior restraint); *Freedman v. Maryland*, 380 U.S. 51 (1965) (motion picture censorship statute unconstitutional); *Bantam Books Inc. v. Sullivan*, 372 U.S. 58 (1963) (system of informal censorship of books held unconstitutional); *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495 (1952) (denial of a film license on basis film was "sacrilegious" unconstitutional); *Niemotko v. Maryland*, 340 U.S. 268 (1951) (lack of standards in license-issuing practice for city park use makes the practice a prior restraint in contravention of the 14th Amendment). *Grosjean v. American Press Co.*, 297 U.S. 233 (1936) (invalidating discriminatory tax on press as an impermissible prior restraint). In addition to these are the cases of *Landmark Communications, Inc. v. Commonwealth of Va.*, U.S., 56 L. Ed.2d 1

Although the Supreme Court has never taken an absolutist position that there can be no abridgment of the freedom of the press under any circumstances, it would appear that outside of the area of pornography there is no governmental interest sufficiently compelling to justify a prior restraint in times of peace. We suspect, although we cannot prove, that the Supreme Court would authorize a prior restraint with regard to publication of military intelligence in a time of serious national peril and concerning a dangerous and indispensable operation such as the Allies' invasion of Normandy in 1944. A relatively concise statement of the two well recognized exceptions to absolute freedom from prior restraint was stated in *Near v. Minnesota*, 283 U.S. 697 (1931) and cited with approval by Justice Brennan in his concurring opinion in *Nebraska Press Assn.*, *supra*, as follows: (1) to prevent the disclosure of information that would inevitably, directly, and immediately cause irreparable damage to the Nation in time of war; and (2) to suppress expression which is simply not deemed "speech" within the meaning of the First Amendment, such as obscenity or incitements to violence or revolution by force. In addition to these two exceptions discussed by Justice Brennan, it appears that with regard to acts which are verbal in nature, as for example a parade, a third exception is the regulation of the time, place and manner of expression, without unduly limiting the opportunity for expression. *Cox v. New Hampshire*, 312 U.S. 569 (1941).

## II

It is inevitable that if the Supreme Court takes something less than an absolutist position that all those who seek to impose prior restraint upon the press will attempt to bring themselves within the exceptions. So it is

---

(1978); *Oklahoma Publishing Co. v. District Court*, U.S., 51 L. Ed.2d 355 (1977); *Nebraska Press Assn. v. Stuart*, 427 U.S. 539 (1976); *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975); *Organization For A Better Austin v. Keefe*, 402 U.S. 415 (1971); *Cox v. New Hampshire*, 312 U.S. 569 (1941) and *Near v. Minnesota*, 283 U.S. 697 (1931) which are discussed in the text of this opinion.

in these cases that the State of West Virginia argues that a child's interest in anonymity with regard to his youthful transgressions and the State's interest in assuring him a future free of prejudice, are sufficiently compelling to permit the statute under review to withstand constitutional scrutiny. We disagree with this conclusion because the Supreme Court of the United States has uniformly held over the past ten years that similar legitimate state and private interests were not sufficiently compelling to permit a prior restraint. The case of *Oklahoma Publishing Co. v. District Court*, U.S., 51 L.Ed.2d 355 (1977) leaps instantly to mind in this regard. In that case an Oklahoma statute provided for juvenile proceedings to be held in private and for juvenile records to be open to public inspection only by order of the court. A state court enjoined news media from publishing the name or photograph of an eleven year old boy in connection with a pending juvenile proceeding charging the boy with delinquency by second degree murder. The Supreme Court, inevitably recognizing all of the beneficent purposes to be served by confidentiality held the prior restraint unconstitutional. We see little distinction between that case and the one before us except that in West Virginia the prior restraint is achieved through a criminal statute while in the *Oklahoma Publishing* case it was achieved through a restraining order carrying the sanction of criminal contempt.

If there were any doubt about restraint after *Oklahoma Publishing*, it was laid to rest in *Landmark Communications, Inc. v. Commonwealth of Va.*, U.S., 56 L.Ed.2d 1 (1978) where the Commonwealth of Virginia attempted to subject persons, including newspapers, to criminal sanctions for divulging information regarding proceedings before state judicial review commissions. The Supreme Court recognized the legitimate state interest to be served by secrecy, namely "the confidentiality requirement can be said to facilitate the work of the commission in several practical respects. When removal or retirement is justified by the charges, judges are more

likely to voluntarily resign or retire without the necessity of a formal proceeding if the publicity which would accompany such proceeding can thereby be avoided." Nonetheless the Supreme Court found that the integrity of government by free discussion would be jeopardized by this particular restraint and invalidated the statute.

Finally, in the case of *Cox Broadcasting Corp. v. Cohen*, 420 U.S. 469 (1975) the Supreme Court held that a Georgia tort action for invasion of privacy grounded upon a newspaper's publication of the name of a rape victim (which was a matter of public record) was an unconstitutional restraint in spite of the legitimate state interest in protecting innocent victims from embarrassment.

The Supreme Court over the past 50 years has had briefed before them every conceivable First Amendment issue by the ablest and most agile legal minds of this century; nonetheless, after repeated, well-considered, and apparently agonizing evaluation of the issues involved, that Court has concluded that a robust, unfettered, and creative press is indispensable to government by free discussion and to the intelligent operation of a democratic society.[2] While it makes no difference whether we agree with them, we gratuitously add that we do. Accordingly we find that to the extent that *W.Va. Code*, 49-7-3 [1941] makes it a criminal offense for a newspaper to publish the name of a child in any proceeding under Chapter 49 of the *W.Va. Code*, it is repugnant to the First Amendment to the *Constitution of the United States* as a prior restraint on the freedom of the press.[3]

---

[2] *See*, for example, *New York Times Co. v. United States*, 403 U.S. 713 (1971) involving the famous "Pentagon Papers" during the Vietnam War. Counsel on all sides were among America's most eminent.

[3] As we have resolved this issue on broad First Amendment grounds, we find it unnecessary to reach the issue of whether *W. Va. Code*, 49-7-3 [1941] unconstitutionally discriminates against newspapers; is unconstitutional when seeking to sanction acts which could not endanger the legitimate state purposes sought to be achieved; or, violates the *West Virginia Constitution* because the

Accordingly the writs of prohibition for which petitioners pray are awarded.

*Writ awarded.*

title of Chapter 65, *Acts of the Legislature,* Regular Session 1977 failed to set forth in the title to the act the fact that such act was making it a crime to publish the name of the child accused of a capital offense.