449 S.E.2d 272

STATE of West Virginia ex rel. the
REGISTER–HERALD and Beckley
Newspapers, Petitioners,

v.

Honorable Thomas B. CANTERBURY,
Judge of the Circuit Court of Raleigh
County, and Adrian Thomas, Jr., Re-
spondents.

Adrian THOMAS, Jr., Petitioner
Below, Appellant,

v.

The REGISTER–HERALD and Beckley
Newspapers, Respondents Below,
Appellees.

Nos. 22187, 22188.

Supreme Court of Appeals of
West Virginia.

Submitted May 3, 1994.

Decided July 19, 1994.

Rudolph L. DiTrapano, Suzanne M. Weise, DiTrapano & Jackson, Charleston, for Register–Herald and Beckley Newspapers.

Karen Kostol, Chief Public Defender, Beckley, for Adrian Thomas, Jr.

WORKMAN, Justice.

These two cases have been consolidated for the purpose of determining whether the Register–Herald and Beckley Newspapers (hereinafter collectively referred to as "newspaper") may publish information regarding the evaluation, diagnosis, and treatment of Adrian Thomas, Jr., a minor convicted as an adult for one count of first degree sexual assault. We grant the writ of prohibition sought by the newspaper to prevent enforcement of the injunction entered by the Circuit Court of Raleigh County, prohibiting publication of specified information concerning Mr. Thomas. Choosing to view the appeal filed by Mr. Thomas as a writ of prohibition,[1] we deny the writ requested by him in an attempt to prevent publication of this information.

Mr. Thomas was charged as a juvenile with the first degree sexual assault of a five-year-old child, which occurred in 1989. At the time of the arraignment, Mr. Thomas was fourteen years of age. He was transferred to the adult jurisdiction of the court[2] and pled guilty to one count of first degree sexual assault. Mr. Thomas was sentenced to a term of fifteen to twenty-five years in the state penitentiary, but was confined at the West Virginia Industrial Home for Youth ("Salem") until he reached the age of eighteen. Upon turning eighteen, he was returned to the circuit court for a review of his sentence as required by West Virginia Code § 49–5–16 (1992).[3]

The hearing on the review of sentencing was held on February 8, 1994, and was closed to the public by order of the trial court,

---

1. In this case, it is logical to treat the appeal filed by Mr. Thomas as a prohibition since it challenges the scope of the injunction entered by the circuit court. See W.Va. R.A.P. 2. The basis for the proceeding initiated by Mr. Thomas with this Court is his position that the injunction issued by the circuit court did not specify, with sufficient clarity, the matters which could not be published, thereby leaving the type of information which can be published open to the discretion of the newspaper. While the injunction at issue expressly permits publication of "information ... [the newspaper] has received relating to ... [Mr. Thomas'] criminal conduct and the court proceedings thereto[,]" Mr. Thomas argues that the term "criminal conduct" is wrongly being interpreted by the newspaper to include acts which occurred or were revealed while he was undergoing treatment.

2. See W.Va.Code § 49–5–10 (1992).

3. West Virginia Code § 49–5–16(b) provides that:

No child who has been convicted of an offense under the adult jurisdiction of the circuit court shall be held in custody in a penitentiary of this State: Provided, That such child may be transferred from a secure juvenile facility to a penitentiary after he shall attain the age of eighteen years if, in the judgment of the commissioner of the department of corrections and the court which committed such child, such transfer is appropriate: Provided, however, That any other provision of this Code to the contrary notwithstanding, prior to such transfer the child shall be returned to the sentencing court for the purpose of reconsideration and modification of the imposed sentence, which shall be based upon a review of all records and relevant information relating to the child's rehabilitation since his conviction under the adult jurisdiction of the court.

pursuant to West Virginia Code § 49–5–1(d).[4] Following the hearing, the State filed a "Memorandum in Opposition to Modification" ("memorandum") of Mr. Thomas' sentence with the circuit court on March 4, 1994. Included in this memorandum were references to the testimony of Mr. Thomas' treating psychiatrist, Dr. Vogelsong, at the sentencing review hearing, along with Dr. Vogelsong's initial assessment of Mr. Thomas and his discharge summary from the sex offender program. The State also referenced in its memorandum testimony of Mr. Thomas' teachers and counselors at Salem as well as the discharge summary from that institution. On that same date, the prosecutor turned over a copy of the memorandum to the newspaper, pursuant to a request from the newspaper.

Mr. Thomas filed a motion to enjoin the newspaper from publishing the information contained in the memorandum [5] on March 4, 1994. On that same date, a hearing was held on Mr. Thomas' motion seeking injunctive relief. The hearing was ex parte as the newspaper was not given notice nor was it provided with an opportunity to appear at the hearing.[6] The circuit court, by order dated March 4, 1994, granted the requested relief, and directed that the newspaper was prohibited from publishing any information it may have obtained from the State or from the memorandum relating to Mr. Thomas.

The newspaper then filed a motion seeking to dissolve the injunction and a hearing was held on March 9, 1994, on the motion. This hearing, as opposed to the review of sentencing hearing, was open to the press. The circuit court did not order and the defense counsel did not request that the hearing be closed to the press.[7] By order entered on March 9, 1994, the circuit court dissolved the injunction to the extent that the newspaper was no longer enjoined from publishing information regarding Mr. Thomas' misconduct and the court proceedings relating thereto. The new order directed, however, that the injunction was to remain in force with respect to any information released to the newspaper regarding any diagnosis, evaluation, or treatment made while Mr. Thomas was hospitalized. The newspaper initiated this proceeding to prevent the enforcement of the circuit court's order enjoining it from publishing information it had lawfully obtained regarding Mr. Thomas.

In seeking to maintain the confidentiality of his treatment records, Mr. Thomas cites two separate statutes. First, he references the general proscription against releasing juvenile records found in West Virginia Code § 49–5–17(d) (1992):

Notwithstanding this or any other provision of this Code to the contrary, juvenile records and law-enforcement records shall not be disclosed or made available for inspection, except that the court may, by written order pursuant to a written petition, permit disclosure or inspection when:

(1) A court having juvenile jurisdiction has the child before it in a juvenile proceeding;

(2) A court exercising criminal jurisdiction over the child requests such records for the purpose of a presentence report or other dispositional proceeding;

(3) The child or counsel for the child requests disclosure or inspection of such records;

---

4. West Virginia Code § 49–5–1(d) provides, in pertinent part: "In all such [juvenile] proceedings the general public shall be excluded except persons whose presence is requested by a child or respondent and other persons the court finds to have a legitimate interest."

5. The information which Mr. Thomas sought to protect included an assessment by Dr. Vogelsong that he was likely to offend again "[w]ithout significant treatment" and also evidence of numerous instances of sexual misconduct committed by Mr. Thomas during his treatment at Salem.

6. While we do not comment on the appropriateness of holding an ex parte hearing in this case, we have previously ruled that "[a]n ex parte preliminary injunction is an extraordinary remedy which is justified only under extraordinary circumstances." Syl. Pt. 1, *Ashland Oil, Inc. v. Kaufman*, 181 W.Va. 728, 384 S.E.2d 173 (1989).

7. During this hearing, which was attended by the press, the contents of the memorandum were discussed.

(4) The officials of public institutions to which a child is committed require such records for transfer, parole or discharge considerations; or

(5) A person doing research requests disclosure, on the condition that information which would identify the child or family involved in the proceeding shall not be divulged.

He cites secondly to the confidentiality requirements imposed by chapter twenty-seven of the code concerning the release of mental health records. Information qualifying as confidential under state mental health laws includes:

Communications and information obtained in the course of treatment or evaluation of any client or patient shall be deemed to be 'confidential information' and shall include the fact that a person is or has been a client or patient, information transmitted by a patient or client or family thereof for purposes relating to diagnosis or treatment, information transmitted by persons participating in the accomplishment of the objectives of diagnosis or treatment, all diagnoses or opinions formed regarding a client's or patient's physical, mental or emotional condition; any advice, instructions or prescriptions issued in the course of diagnosis or treatment, and any record or characterization of the matters hereinbefore described. It does not include information which does not identify a client or patient, information from which a person acquainted with a client or patient would not recognize such client or patient, and uncoded information from which there is no possible means to identify a client or patient.

W.Va.Code § 27–3–1(a) (1992).[8] On the basis of these two statutes, he maintains that the information obtained by the newspaper was not lawfully obtained, and is therefore, not subject to publication.

In response to these arguments, the newspaper argues that the statutory provisions prohibiting release of mental health records do not pertain to anyone other than the health department and its employees. *See* W.Va.Code § 27–5–9(e) (1992). Accordingly, they conclude that publication of information concerning Mr. Thomas' treatment and diagnosis would not violate the statute. *See id.*

As this Court recognized in syllabus point one of *State ex rel. Daily Mail Publishing Co. v. Smith,* 161 W.Va. 684, 248 S.E.2d 269 (1978), *aff'd,* 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979), "[a]ny prior restraint on expression comes to this Court with a heavy presumption against its constitutional validity." At issue in *Smith,* was the constitutionality of a statute which forbade newspapers from publishing the name of a child in connection with any juvenile proceeding absent permission from the trial court. 161 W.Va. at 685, 248 S.E.2d at 269 (discussing W.Va.Code § 49–7–3 (1941)). The state, in that case, argued "that a child's interest in anonymity with regard to his youthful transgressions and the State's interest in assuring him a future free of prejudice, are sufficiently compelling to permit the statute under review to withstand constitutional scrutiny." 161 W.Va. at 689, 248 S.E.2d at 271. We did not accept that contention in *Smith;* nor do we adopt a similar argument advanced here—that the interest in protecting Mr. Thomas' reputation combined with preserv-

8. Pursuant to statute, information qualifying as confidential under West Virginia Code § 27–3–1(a) may only be disclosed:

(1) In a proceeding under section four [§ 27–5–4], article five of this chapter to disclose the results of an involuntary examination made pursuant to sections two, three [§§ 27–5–2, 27–5–3] or four, article five of this chapter;

(2) In a proceeding under article six-A [§ 27–6A–2 et seq.] of this chapter to disclose the results of an involuntary examination made pursuant thereto;

(3) Pursuant to an order of any court based upon a finding that said information is suffi-

ciently relevant to a proceeding before the court to outweigh the importance of maintaining the confidentiality established by this section;

(4) To protect against a clear and substantial danger of imminent injury by a patient or client to himself or another; and

(5) For treatment or internal review purposes, to staff of the mental health facility where the patient is being cared for or to other health professionals involved in treatment of the patient.

W.Va.Code § 27–3–1(b).

ing a juvenile's expectation of confidential medical records and treatment is sufficient to outweigh the First Amendment right of freedom of the press.

As we discussed in *Smith*, the United States Supreme Court has a long history of resolving cases which involve a balancing of state and private interests versus freedom of speech in favor of the unfettered exercise of First Amendment rights. *See id.* at 689–90, 248 S.E.2d at 271–72. In one of those cases, *Oklahoma Publishing Co. v. District Court,* 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977), the Supreme Court lifted an injunction which prohibited publication of the name or photograph of an eleven-year-old boy who was charged with second degree murder, noting that:

> members of the press were in fact present at the hearing with the full knowledge of the presiding judge, the prosecutor, and the defense counsel. No objection was made to the presence of the press in the courtroom or to the photographing of the juvenile as he left the courthouse. *There is no evidence that petitioner acquired the information unlawfully or even without the State's implicit approval.* The name and picture of the juvenile here were 'publicly revealed in connection with the prosecution of the crime,' ... Under these circumstances, the District Court's order abridges the freedom of the press in violation of the First and Fourteenth Amendments.

*Id.* at 311–12, 97 S.Ct. at 1047 (footnote and citation omitted, emphasis supplied).

The facts concerning the open courtroom and the failure of any party to object to the presence of the press at the hearing on lifting the injunction in the *instant case* significantly parallel those excerpted above from

*Oklahoma Publishing. See id.* Equally similar is the fact that the newspapers in both cases obtained the information which they sought to print through lawful means. In this case, the newspaper merely requested a copy of the memorandum from the State, and one was promptly provided to it.[9]

██ As to West Virginia Code § 49–5–17, which provides for the expungement of juvenile proceedings one year following the minor's eighteenth birthday and mandates that following expungement, the records are available only pursuant to court order, we determine this provision to be inapplicable due to the trial and conviction of Mr. Thomas as an adult. The only apparent avenue for carving an exception to this well-settled area of the law is the confidentiality of mental health records. Mr. Thomas argues that the information obtained by the newspaper was not "lawfully obtained" based on the non-disclosure requirements of West Virginia Code § 27–5–9 (1992). West Virginia Code § 27–5–9 proscribes the release by the department of health, its facilities, or its employees of mental health treatment information except pursuant to certain statutory conditions.[10]

The newspaper maintains that prior restraint cannot be achieved through West Virginia Code § 27–5–9 because the statute's prohibitory scope is expressly limited by the language which directs that "clinical records" of patients who are involuntarily hospitalized for treatment "shall be confidential and shall not be released *by the department of health or its facilities or employees* to any person or agency outside of the department...." W.Va.Code § 27–5–9(e). Because the information released to the press did not emanate from "the department of health or its facili-

---

9. While we must agree with the newspaper's position that they did not violate the law by requesting and accepting from the State its memorandum, we are nonetheless troubled by the release of the memorandum to the press given the inclusion and references to clinical and diagnostic information which is subject to confidentiality requirements. *See* W.Va.Code §§ 27–3–1(a), 27–5–9. In the future, we would caution all lawyers, as officers of this Court, to carefully scrutinize any documents prior to press release for information subject to confidentiality restric-

tions, and to seek guidance of the court if they are unsure of the propriety of release.

10. Those conditions upon which release is permitted are: "(1) Pursuant to an order of a court of record. (2) To the attorney of the patient, whether or not in connection with pending judicial proceedings. (3) With the written consent of the patient or of someone authorized to act on the patient's behalf and of the director to...." W.Va.Code § 27–5–9(e).

ties or employees," the newspaper submits that the memorandum was not a document protected by the provisions of West Virginia Code § 27–5–9. We agree. The inapplicability of West Virginia Code § 27–5–9 is evidenced both by the fact that the releasing party was not the department of health, its agents or employees, and by the fact that the document released was not a clinical record.[11]

As we noted in *Smith,*

The Supreme Court over the past 50 years has had briefed before them every conceivable First Amendment issue by the ablest and most agile legal minds of this century; nonetheless, after repeated, well-considered, and apparently agonizing evaluation of the issues involved, that Court has concluded that a robust, unfettered, and creative press is indispensable to government by free discussion and to the intelligent operation of a democratic society.

161 W.Va. at 690, 248 S.E.2d at 272. Accordingly, we hold that a court order that prohibits publication of information contained in the memorandum concerning the acts, diagnosis, and treatment of an individual who is no longer a minor, but was at the time of treatment, constitutes an impermissible prior restraint, provided such document was lawfully obtained by the newspaper.

Based on the foregoing opinion, we grant the writ of prohibition requested by the newspaper and we deny the writ of prohibition [12] requested by Mr. Thomas.

No. 22187—Writ granted;

No. 22188—Writ denied.

---

**11.** *But see* note 9, *supra.*

**12.** *See supra* note 1.