716 S.E.2d 507 (2011)
STATE of West Virginia ex rel. The LINCOLN JOURNAL, INC., Thomas A. Robinson, Individually, and Ron Gregory, Individually, Petitioners
v.
Honorable F. Jane HUSTEAD, Judge of the Circuit Court of Cabell County; and Timothy Butcher and Bobby Adkins, Respondents.
No. 35734.
Supreme Court of Appeals of West Virginia.
Submitted January 25, 2011.
Decided May 2, 2011.
*509 David Allen Barnette, Esq., Pamela D. Tarr, Esq., Vivian H. Basdekis, Esq., Jackson Kelly, PLLC, Charleston, WV, for Petitioners.
Thomas E. Scarr, Esq., Gary A. Matthews, Esq., Jenkins Fenstermaker, PLLC, Huntington, WV, for Respondents.
PER CURIAM:
In this original jurisdiction action, the petitioners, The Lincoln Journal, Inc., Thomas A. Robinson, and Ron Gregory, seek a writ of prohibition against the Honorable F. Jane Hustead, Circuit Court of Cabell County, West Virginia, from enforcing a September 14, 2010, order compelling petitioners to reveal alleged confidential and First Amendment privileged news sources and news-gathering materials.[1] Petitioners assert that a *510 writ of prohibition is appropriate because if petitioners are forced to produce the privileged materials and reveal the identities of their confidential informants, the resulting breach of confidentiality and exposure of privileged news gathering materials will be severe and irreparable. On November 17, 2010, this Court issued a Rule to Show Cause. Respondents, Timothy Butcher and Bobby Adkins, filed a response to the petition for writ of prohibition asserting that the circuit court did not commit clear error under West Virginia law in requiring the defendants to disclose their confidential sources and that other means exist to prevent prejudice to the petitioners if disclosure is ordered. Having fully considered the record, briefs, and arguments of the parties, we find that the circuit court committed clear error in compelling petitioners to reveal alleged confidential and First Amendment privileged news sources and news-gathering materials. For the reasons set forth below, the writ of prohibition is granted as moulded and the matter is remanded with directions.

I.

FACTS AND PROCEDURAL HISTORY
On December 6, 2008, respondents filed their Complaint against the petitioners in the Circuit Court of Cabell County, West Virginia, alleging that eleven news articles reporting on the 2008 Lincoln County Primary Election and published by the Lincoln Journal from approximately April 16, 2008, to May 28, 2008, were defamatory. These articles reported an ongoing investigation by Prosecutor Stevens into alleged campaign law violations during the 2008 Lincoln County primary election, including allegations that election laws were violated by individuals who funneled or received thousands of dollars in support of candidates backed by Dan Butcher.[2] Respondents also alleged public disclosure of private facts, false light invasion of privacy, and intentional and/or negligent infliction of emotional distress related to those articles.[3]
In addition to disclosed sources, including, among others, the Lincoln County Prosecuting Attorney, William J. ("Jackie") Stevens, II, the articles published by the defendants contain numerous references to unidentified sources for the subject allegations, variously cited as "unnamed sources," "Lincoln Journal sources," "those reporting/complaining to the Lincoln Journal," "courthouse sources," a "source familiar with Lincoln County legal matters," and "an unnamed Charleston Attorney."[4] The subject articles reference two criminal complaints that were received by the Lincoln County Prosecuting Attorney, the West Virginia Secretary of State, and the United States Attorney for the Southern District of West Virginia, without identifying the source(s), drafter(s) and/or delivery method for the criminal complaints. The identity of the source(s) of the allegations is omitted, despite referring to the source(s) "who provided the Lincoln Journal with the complaint," "those familiar with the complaint," *511 friends of the person who filed the complaint, and the anonymous person "who prepared the complaint."
During discovery, respondents served written interrogatories upon the petitioners on August 21, 2009, requesting that petitioners disclose the identity of their confidential news sources and news-gathering materials. On September 29, 2009, petitioners responded to respondent's discovery, but objected to the disclosure of their alleged First Amendment privileged news materials and confidential sources. Petitioners asserted a qualified reporter's privilege under the First Amendment to the United States Constitution and under West Virginia state law.
In response, respondents filed a motion to compel and supporting memorandum on November 13, 2009, requesting that the circuit court enter an order requiring the petitioners to fully respond to respondents' discovery requests and to disclose the requested source information. Petitioners responded to the motion to compel on November 13, 2009, asserting that the respondents had not satisfied Hudok v. Henry, 182 W.Va. 500, 389 S.E.2d 188 (1989), because respondents failed to make a "clear and specific showing that the information [sought] is highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources." Id. at Syl. Pt. 1, 389 S.E.2d 188. Additionally, petitioners argued that respondents must make a preliminary showing of substantial falsity with respect to the allegedly defamatory allegations before disclosure would be appropriate, and that the public's interest protecting a newspaper's confidential sources outweighs respondent's private interests in compelling disclosure in this case. Respondents filed a reply arguing that the statements and allegations contained in the articles were false. Respondents argued that the deposition testimony of Prosecutor Stevens, the only alleged source identified in the subject articles, suggested that his testimony did not establish the truth and accuracy of the defamatory statements and allegations as petitioners claimed.
On January 26, 2010, the circuit court held a hearing on the respondents' motion to compel. Based upon the circuit court's review of the briefs, the arguments of counsel, and the status of discovery at that time, the court entered an order on February 12, 2010, finding that respondents' motion was "premature for failure to exhaust alternative sources," but noting that respondents could renew their motion at such time they had taken the steps to exhaust other reasonable alternative sources.
Following the circuit court's ruling, plaintiffs issued subpoenas directed to the Lincoln County Prosecuting Attorney, the West Virginia Secretary of State, and the United States Attorney for the Southern District of West Virginia in an attempt to discover the identity of the individuals who signed the criminal complaints at issue. On May 14, 2010, respondents received denials to their subpoenas. Thereafter, respondents filed a renewed motion to compel against the petitioners, asserting that the potential alternative sources identified during the prior hearing had been exhausted, without success, and again requested that petitioners be ordered to fully respond to their discovery requests, disclosing the requested source information and material.
Petitioners filed a response brief wherein they renewed their previous arguments, arguing that in order to be entitled to disclosure of the requested source information, respondents must establish "substantial falsity" of the defamatory statements and allegations, and that such disclosure should only occur as a last resort following the exhaustion of all alternative sources for that information. Petitioners asserted that the alleged defamatory publications rely on the statements of Prosecutor Stevens, as well as two criminal complaints submitted to him, and asserted that both are inherently reliable and credible disclosed sources and that they confirm the allegedly defamatory statements included in the articles published by the petitioners.[5] They also argued that alternative *512 means of obtaining the source information had not been exhausted because, among other reasons, plaintiffs had not sought to enforce, in court, the FOIA requests and/or the subpoenas duces tecum.
The circuit court conducted a hearing on the motion on July 29, 2010, providing the parties an opportunity for oral argument. On September 14, 2010, the circuit court entered an order granting respondents' renewed motion to compel, permitting petitioners until September 28, 2010, to file their writ of prohibition with this Court, or to otherwise comply with the terms of the order and fully respond to respondents' First Set of Interrogatories and Request for Production of Documents, Interrogatory Nos. 1, 4, 7, 10, 13, 16, 19, 22, 25, 28, 31, 35 and 36 and Request for Production of Documents Nos. 3 and 4. The circuit court stayed its proceedings upon the filing of the instant petition for writ of prohibition.

II.

STANDARD OF REVIEW
Pursuant to Art. VIII, § 3, of the West Virginia Constitution, this Court has original jurisdiction in prohibition proceedings. With respect to the standard by which this Court determines its discretion to grant the extraordinary remedy of a writ of prohibition regarding discovery matters, we have held:
Where prohibition is sought to restrain a trial court from the abuse of its legitimate powers, rather than to challenge its jurisdiction, the appellate court will review each case on its own particular facts to determine whether a remedy by appeal is both available and adequate, and only if the appellate court determines that the abuse of power is so flagrant and violative of petitioner's rights as to make a remedy by appeal inadequate, will a writ of prohibition issue.
Syl. Pt. 2, Woodall v. Laurita, 156 W.Va. 707, 195 S.E.2d 717 (1973). "A writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders." Syl. Pt. 3, State ex rel. McCormick, Relator v. Zakaib, 189 W.Va. 258, 430 S.E.2d 316 (1993) (quoting Syl. Pt. 1, State Farm Mutual Automobile Ins. Co. v. Stephens, 188 W.Va. 622, 425 S.E.2d 577 (1992)). "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where a trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va.Code 53-1-1." Syl. Pt. 1, State ex rel. Shepard v. Holland, 219 W.Va. 310, 633 S.E.2d 255 (2006) (quoting Syl. Pt. 2, State ex rel. Peacher v. Sencindiver, 160 W.Va. 314, 233 S.E.2d 425 (1977)).
This Court has held that
"[i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ *513 of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight."
Syl. Pt. 2, State ex rel. Weirton Med. Ctr. v. Mazzone, 214 W.Va. 146, 587 S.E.2d 122 (2002) (citing Syl. Pt. 4, State ex rel. Hoover v. Berger, 199 W.Va. 12, 483 S.E.2d 12 (1996)). This Court has also recognized that writs of prohibition are proper in cases "where there is a high probability that the trial will be completely reversed if the error is not corrected in advance." State ex rel. Allstate Ins. Co. v. Gaughan, 203 W.Va. 358, 365, 508 S.E.2d 75, 82 (1998) (citing Syl. Pt. 1, State ex rel. USF & G v. Canady, 194 W.Va. 431, 460 S.E.2d 677 (1995)).

III.

DISCUSSION
In Hudok v. Henry, 182 W.Va. 500, 389 S.E.2d 188 (1989), this Court set forth the standard for a qualified reporter's privilege and the disclosure of source information and expressly held that "[t]o protect the important public interest of reporters in their news-gathering functions under the First Amendment to the United States Constitution, disclosure of a reporters' confidential sources or news-gathering materials may not be compelled except upon a clear and specific showing that the information is highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources." Id. at Syl. Pt. 1, 389 S.E.2d 188. In so holding, this Court noted that
"courts have considered the qualified privilege to rest on two general grounds: (1) the protection of confidential sources which is often critical to news gathering, especially on sensitive subjects where a promise of anonymity is often the only way in which the reporter can obtain information and develop news leads, and (2) the news-gathering function itself would be substantially hampered and the free flow of information to the public would be impinged if newspersons could be routinely subpoenaed ... We find these principles to be well established and to follow our understanding of the First Amendment free press clause. In State ex rel. Daily Mail Publishing Co. v. Smith, 161 W.Va. 684, 690, 248 S.E.2d 269, 272 (1978), aff'd, 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979), we "concluded that a robust, unfettered, and creative press is indispensable to government by free discussion and to the intelligent operation of a `democratic society.' (Footnote omitted)."
Id. at 504, 389 S.E.2d at 192. However, we also recognized that the privilege will be applied less vigorously in certain circumstances and stated,
"[a]s the court stated in Zerilli v. Smith, 211 U.S.App.D.C. 116, 123, 656 F.2d 705, 712 (1981): Every other circuit that has considered the question has also ruled that a privilege should be readily available in civil cases, and that a balancing approach should be applied. Zerilli also recognized the distinction between civil actions in which the reporter is a party and those in which he is not. Where the reporter is a party, and particularly in a libel action, "the equities weigh somewhat more heavily in favor of disclosure. 211 U.S.App.D.C. at 125, 656 F.2d at 714."
Hudok, 182 W. Va. at 503-504, 389 SE.2d at 191-192.[6]
In the instant case, petitioners urge this Court to grant the writ to prohibit the enforcement of the circuit court's order for two *514 reasons: 1) that the circuit court failed to properly consider persuasive opinions from other courts that require a preliminary showing of "substantial falsity" prior to granting compulsory disclosure of confidential news sources; and 2) the circuit court erred in failing to properly apply all three requirements of this Court's test enunciated in Hudok v. Henry, 182 W.Va. 500, 389 S.E.2d 188.[7]
Petitioners argue that the record shows that the series of articles at issue were principally based on the statements of Prosecutor Stevens, who was conducting the investigation, and/or criminal complaints that were filed with the prosecutor's office. In addition to these disclosed sources, petitioners allege that the articles were corroborated by other individuals who, out of fear of reprisal, spoke only on condition of anonymity. They contend that none of the articles is based solely on information from an undisclosed source.
Petitioners allege that checking account records of Timothy Butcher and Bobby Adkins confirm that money in their accounts originated with Dan Butcher.[8] Petitioners also allege that the truthfulness of the articles, which report a matter of public concern, is confirmed by the sworn testimony of Prosecutor Stevens, who had firsthand knowledge of the investigation. Petitioners state that during his deposition, respondents questioned Prosecutor Stevens concerning the truthfulness and accuracy of the articles and each statement attributed to him, and that Prosecutor Stevens only identified one mistake in the articles, wherein he explained that the subpoenas were signed by the circuit clerk, not by Judge Hoke.
Petitioners take specific issue with the circuit court's order because it does not limit the disclosure to any particular anonymous source, but rather, seeks the disclosure of each and every confidential source and news-gathering material petitioners used in connection with their articles, regardless of whether the sources are merely cumulative or whether the source has been revealed during discovery. As to the sources of the criminal complaints, petitioners allege that the record indicates that respondents had the opportunity during Prosecutor Stevens' deposition to inquire directly as to the identity of the author(s) of the criminal complaints, but never asked the question.
Petitioners assert that in mid-April 2008, petitioner Ron Gregory received a copy of a criminal complaint filed with the prosecutor's office dated April 18, 2008. A few days later, a copy of a second criminal complaint filed with the prosecutor's office dated April 21, 2008, was left for Mr. Gregory. On each occasion, the complaint was left in an envelope on Mr. Gregory's desk, and was already redacted to "white out" the signature line of the complaint. Enclosures were not included with either complaint, and Mr. Gregory was not present when either complaint was delivered. Petitioners allege that the complaints, which were prepared by anonymous sources, and their content was confirmed by other sources familiar with the complaints, including Prosecutor Stevens. Petitioners contend that the articles accurately report the allegations in the complaints, and that Prosecutor Stevens confirmed receiving the complaints and investigating them. Petitioners further contend that anonymous sources also corroborated the content and delivery of the complaints. Petitioners assert that compelling Mr. Gregory to reveal what he does not know about complaints filed with the prosecutor would be futile. As to the identity of the remaining sources, petitioners allege that respondents have only pursued efforts to obtain information about the identity of the author and/or signatory of the two criminal *515 complaints. Thus, respondents did not expend any effort or exhaust alternatives with respect to discovering the remaining sources they seek.
As to the circuit court's application of the requisite Hudok factors, petitioners allege that Judge Hustead failed to properly apply all three requirements of this Court's Hudok test and require the respondents to prove each factor "upon a clear and specific showing." 182 W.Va. at 500, 389 S.E.2d at 188. As to the first Hudok factor, petitioners allege that the information sought is immaterial and irrelevant to plaintiff's claim regardless of the identity of the undisclosed sources, because the articles in question were based on inherently reliable and credible disclosed sources, namely the Lincoln County Prosecutor and two criminal complaints filed with the prosecutor's office. None of the articles were based solely on confidential sources. Thus, because the identity of any confidential source is merely superfluous, none is so highly material or relevant as to warrant breaching the qualified reporter's privilege. Likewise, as to the second Hudok factor, petitioners argue that the information sought is not necessary or critical to the maintenance of the claim because each article is supported by reliable, disclosed sources.
Regarding the third Hudok factor, petitioners allege that the circuit court erred in compelling disclosure because the respondents failed to exhaust other alternative sources. Petitioners allege that in the respondents' renewed motion to compel, they only outlined efforts made to obtain the identity of the two criminal complaint sources, and that although respondents initiated efforts to discover the anonymous complainants, they never completed such efforts. Specifically, petitioners allege that the respondents did not seek to enforce their subpoenas through legal process prior to filing the renewed motion to compel. Petitioners also assert that respondents admitted that their efforts were limited exclusively to the two complainants and have not expended any efforts with respect to discovering the other sources they seek.
Conversely, respondents allege that the circuit court properly analyzed the Hudok factors in this case. Respondents' arguments largely echo the findings of fact and conclusions of law made by Judge Hustead in the order compelling disclosure. Respondents assert that issues of negligence and/or "actual malice," "recklessness," and punitive damages all exist in this case and the information sought is highly material and relevant, and necessary and critical to the maintenance of their claims. Respondents also point to various decisions from other jurisdictions and argue that exhaustion of all alternative remedies is not required prior to compelling disclosure.
We conclude that the circuit court, in ordering the disclosure of the respondents' alleged First Amendment protected news sources and news-gathering materials, failed to conduct a specific Hudok analysis of the information sought by respondents. We observe that the circuit court's order failed to identify each of the specific source articles that contained allegedly defamatory information and as to each such source article, the circuit court failed to conduct a separate specific Hudok analysis.
An analysis of the circuit court's order reveals that, in a summary fashion, the court merely references a "number of articles" that contain allegations of criminal conduct and/or other wrongful activities related to the 2008 Lincoln County Primary Election, and orders the petitioners to "fully and completely respond to [respondents'] August 21, 2009, discovery requests, including providing information as to the identity and sources of persons and information relied upon in publishing the subject articles and defamatory statements and allegations contained therein." Based upon the fact that respondents have referenced eleven separate articles containing various disclosed and/or confidential source information and varying allegations are at issue herein, we conclude that in order for the Hudok factors to be properly applied in this case, it is first necessary for the circuit court to separately identify each alleged defamatory article with specificity, identify each source therein that the respondents seek, and thereupon conduct a *516 separate Hudok analysis for each.[9] Such an analysis will provide a reviewing court the necessary specific tangible information needed to assess any appeal, and will properly balance the protection of the important public interest of reporters in their news-gathering functions under the First Amendment to the United States Constitution and respondents' rights herein. Accordingly, we grant the petitioners' writ of prohibition as moulded, and remand the matter back to the circuit court for a specific Hudok hearing to be conducted in accordance with this opinion, and entry of an order containing more specific information.

IV.

CONCLUSION
For the foregoing reasons, we conclude that the circuit court has exceeded its legitimate powers in requiring the petitioners to disclose their confidential news sources, and thus its ruling is subject to a writ of prohibition. The petitioners' writ of prohibition is granted as moulded and this case is remanded for further actions consistent with this opinion.
Writ granted as moulded.
Justice KETCHUM concurs and reserves the right to file a concurring opinion.
KETCHUM, J., concurring:
I completely agree with the majority's opinion. I write separately to emphasize that speech like that used by the Lincoln Journal is entitled to special protection in the courts.
Debate on matters of public concern should be "uninhibited, robust, and wideopen."[1] This is because "speech concerning public affairs is more than self-expression; it is the essence of self-government."[2] The U.S. Supreme Court has therefore repeatedly emphasized that speech on matters of public issues occupies the "highest rung of the hierarchy of First Amendment values,"[3] and is entitled to special protection.
"Speech is powerful. It can stir people to action, move them to tears of both joy and sorrow, and ... inflict great pain.... [But] as a Nation we have chosen ... to protect even hurtful speech on public issues to ensure that we do not stifle public debate."[4]
I therefore whole-heartedly concur with the majority's decision.
NOTES
[1] The First Amendment to the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people to peaceably assemble, and to petition the Government for a redress of grievances."
[2] Petitioners represent that Dan Butcher is respondent Timothy Butcher's brother and, at various times, has been the employer of both petitioners Butcher and Adkins. At all times relevant to the facts presented here, Dan Butcher owned and managed a rival Lincoln County newspaper, the Lincoln Standard, which is now defunct. Petitioners allege that Dan Butcher used his competing newspaper and the channel of communication it provided to back a slate of candidates, referred to as the Butcher slate, which were the same candidates that respondents made their contributions to. Petitioners assert that the Lincoln Standard was a critic of the Lincoln Journal, the Stowers family, and petitioner Ron Gregory.
[3] Petitioners represent that Dan Butcher and one of his companies, Custom Surroundings, Inc., initiated a virtually identical action against petitioners in federal court, styled Dan Butcher and Custom Surroundings, Inc. v. The Lincoln Journal, Inc., Thomas Robinson, and Ron Gregory, Case No. 2:09-CV-00373. In that federal action, Dan Butcher is represented by the same counsel retained by respondents herein, and filed in the federal proceeding the same motion to compel petitioner's alleged confidential news sources. Because this same issue was pending before the Circuit Court of Cabell County, the federal court stayed its proceedings pending resolution of the respondents' state court motion to compel.
[4] According to the circuit court's order, the parties dispute the number of distinct confidential sources identified in the articles.
[5] Petitioners cited to the existence and timing of three checks and the ratio/percentage of contributions made by Timothy Butcher and Bobby Adkins compared to their reported income as support for their published allegations of criminal conspiracy and illegal funneling of money to campaigns. Respondents pointed out that petitioners were not in possession of any such checks until produced in discovery in this case, after the articles at issue herein were published. Respondents also argued that their affidavits and the affidavit of Dan Butcher provided explanations for the existence and purpose of the checks. Respondents asserted that both Timothy Butcher and Bobby Adkins worked for Dan Butcher and that some of the checks identified were payment for work they had performed for Dan Butcher. Another check from Timothy Butcher to Bobby Adkins was identified as being payment for the outstanding balance on a camper Timothy Butcher had purchased from Bobby Adkins.
[6] In footnote 10 of Hudok, this Court also noted that

"Zerilli, 211 U.S.App.D.C. at 125, 656 F.2d at 714, made this statement: `As we suggested in Carey v. Hume, [160 U.S.App.D.C. 365], 492 F.2d [631] at 634, 636-639 [cert.dismissed, 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974)], this will be particularly true in libel cases involving public officials or public figures where the rule of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.E.2d 686 (1964), applies.' The United States Supreme Court in Herbert v. Lando, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979), considered at some length the related question of the extent to which the plaintiff, a public figure, could, through discovery in a libel action, explore the motives and the editorial process of the press persons who had produced an alleged defamatory article."
182 W.Va. at 504 n. 10, 389 S.E.2d at 192 n. 10.
[7] To the extent that the petitioners urged the circuit court to consider authority from other jurisdictions that has not been adopted by this Court and require a showing of "substantial falsity" prior to granting compulsory disclosure of confidential news sources, we find that the circuit court did not commit clear error in its decision, and, accordingly, the issue of whether it is appropriate to require a showing of "substantial falsity" is not appropriate for our consideration in a writ of prohibition proceeding. Because we find that the disposition of this case can, however, be resolved by the second issue presented by petitioners, we will address that issue in the discussion that follows.
[8] To the extent that the checking account information is not relevant in resolving this writ of prohibition, we will not discuss the same.
[9] Respondents have referenced various articles, many of which simply refer to previous articles for source information. The circuit court should necessarily identify the initial articles which contain the information which is allegedly defamatory and, as to each, determine if the specific source was promised confidentiality and then otherwise apply the requisite Hudok factors.
[1] New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).
[2] Garrison v. Louisiana, 379 U.S. 64, 74-75, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964).
[3] Connick v. Myers, 461 U.S. 138, 145, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).
[4] Snyder v. Phelps, 562 U.S. ___, ___, 131 S.Ct. 1207, 1220, 179 L.Ed.2d 172 (2011).