**FILED**

**June 12, 2023**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 21-0485 – *WW Consultants, Inc. v. Pocahontas County Public Service District, et al.*

Armstead, Justice, concurring, in part, and dissenting, in part:

Petitioner WW Consultants, Inc. ("Petitioner WWC") challenges multiple orders by the business court that either dismissed or granted summary judgment to three third-party defendant contractors in this complex litigation involving the construction of a wastewater treatment facility. The majority opinion thoroughly addresses the issues raised and I agree with its well-reasoned conclusions with one exception. The majority opinion declined to address the business court's order granting Respondents'[1] motion to strike Petitioner WWC's "Notice of Intent to Attribute Fault" after concluding that the order is interlocutory and not subject to appellate review at this time. As explained below, I believe the Court should have addressed this order.

## A. Appealability

Petitioner WWC filed a direct appeal of the business court's order granting Respondents' joint motion to strike Petitioner's notice of intent to attribute fault. While the majority opinion correctly notes that this is an interlocutory order, appellate review of this order is appropriate under the collateral order doctrine. As this Court has previously noted, "[a]n interlocutory order would be subject to appeal under the [collateral order] doctrine if it (1) conclusively determines the disputed controversy, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively

---

[1] The joint motion to strike Petitioner WWC's notice of intent to attribute fault was filed by Respondents Orders Construction Company and A-3 USA.

1

unreviewable on appeal from a final judgment." *Durm v. Heck's, Inc.*, 184 W. Va. 562, 566 n.2, 401 S.E.2d 908, 912 n.2 (1991) (internal quotations and citation omitted).

The business court's order granting Respondents' joint motion to strike Petitioner's notice of intent to attribute fault meets all three prongs of the collateral order test. First, the order conclusively determines one of the disputed controversies in this case, i.e., whether Petitioner WWC will be permitted to attribute fault to two nonparties. The second factor focuses on whether the business court's ruling resolves significant issues in this matter separate from the merits of the action. There is little question that this factor is also met. A crucial issue in this case is whether Petitioner WWC can defend against the new headworks claim, asserted in Pocahontas PSD's first amended counterclaim, by attributing fault to nonparties. Clearly, the denial of the right to file a notice of non-party fault is both "significant" and is an issue "separate from the merits" of this action. Indeed, the majority expressly finds, in declining to address the timeliness of the notice of non-party fault, that "[t]he business court's ruling on the timeliness of that notice . . . cannot reasonably be said to have *given rise to* the business court's rulings on the substantive issues regarding the merits of the underlying indemnity and contribution claims addressed in the orders that are properly before us on appeal." (Emphasis in original). Accordingly, the second factor of the collateral order test is clearly met. The final consideration in the collateral order test is whether the order "is effectively unreviewable on appeal from a final judgment." *Durm*, 184 W. Va. at 566 n. 2, 401 S.E.2d at 912 n. 2. Postponing review of a ruling denying a party the ability to attribute fault against nonparties to the post-trial stage

is ineffective because it deprives Petitioner of the underlying objective of our nonparty fault statutory law. Under West Virginia Code § 55-7-13a(b) (2015), a jury may consider "the liability of each person, including plaintiffs, defendants and nonparties who proximately caused the damages[.]" Without the benefit of all of the relevant parties, the jury will not be able to perform this function and a reviewing appellate court will be left with only one option if it determines that the business court erred by striking Petitioner's motion to attribute fault to nonparties—reversing the verdict and remanding for a new trial. Thus, postponing appellate review of a ruling on whether Petitioner can attribute fault to a nonparty will fail to achieve the intended goal of our nonparty fault statute. West Virginia Code § 55-7-13d(a)(1) provides that "[i]n assessing percentages of fault, the trier of fact *shall consider the fault of all persons who contributed to the alleged damages* regardless of whether the person was or could have been named as a party to the suit." (Emphasis added). In addition, West Virginia Code § 55-7-13c(a) states, in relevant part, that "[e]ach defendant shall be liable only for the amount of compensatory damages allocated to that defendant in direct proportion to that defendant's percentage of fault[.]" Clearly, the jury will be unable to fulfill its duty to consider the fault of "all persons" who contributed to the alleged damages, and to allocate damages in direct proportion to each defendant's percentage of fault if the parties are denied the right to identify nonparties who are at fault. It is difficult to imagine an instance better suited for application of the collateral order doctrine than the immediate, pre-trial review of an order denying a party the opportunity to file a notice of nonparty fault. Based on the foregoing, I believe that appellate review

3

of an interlocutory order denying a party the ability to attribute fault to nonparties is appropriate under the collateral order doctrine.

In addition to considering the business court's order under the collateral order doctrine, this Court could have converted this direct appeal to a petition for a writ of prohibition under Rule 2 of the West Virginia Rules of Appellate Procedure.[2]  We have done so in a number of cases. *See State ex rel. W. Va. Univ. Hosps., Inc. v. Gaujot*, __ W. Va. __, __ S.E.2d __ (2023); *MS Mine Repair & Maint., Inc. v. Miklos*, 238 W. Va. 707, 711, 798 S.E.2d 833, 837 (2017); *State ex rel. Register-Herald v. Canterbury*, 192 W. Va. 18, 19 n.1, 449 S.E.2d 272, 273 n.1 (1994).

In the present case, judicial economy clearly provides a basis for treating Petitioner's direct appeal of the business court's order granting Respondents' joint motion to strike Petitioner's notice of intent to attribute fault as a writ of prohibition.  First, we have an order from the business court with findings of fact and conclusions of law explaining its rationale for granting the motion to strike.  Second, this complex litigation is being remanded for further proceedings consistent with the majority opinion.  After this litigation concludes in the lower court, it is possible that the issue of whether Petitioner

---

[2] Rule 2 provides:

> In the interest of expediting a ruling, or for other good cause shown, the Intermediate Court or the Supreme Court may suspend the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction. These rules shall be construed to allow the Intermediate Court or the Supreme Court to do substantial justice.

WWC should have been permitted to file a notice of nonparty fault against Orders Construction Company and A-3 USA may be raised again in a direct appeal. In the event that this issue is raised in a subsequent appeal and the Court rules in Petitioner WWC's favor, this matter would be remanded, again, for a new trial. Given the complexity of the issues, as well as the multiple claims and parties involved in this case, this Court should have resolved this issue in the instant appeal for the sake of judicial economy.

### B. Business Court's Ruling on Nonparty Fault

Had this Court converted Petitioner WWC's direct appeal of the business court's order to a petition for a writ of prohibition, our review would have been pursuant to syllabus point four of *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996):

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

I believe Petitioner WWC is entitled to relief under the third *Hoover* factor because the business court's order granting the motion to strike is clearly erroneous as a matter of law. Alternatively, had we addressed the appeal of the business court's order under the collateral order doctrine, I would have reached the same inescapable conclusion that the business court erred in refusing to accept the notice of nonparty fault. In either case, had we addressed the issue on its merits, I believe WWC was clearly entitled by law to file its notice of nonparty fault.

> The West Virginia Code provides that
>
> In any action based on tort or any other legal theory seeking damages for personal injury, . . . recovery shall be predicated upon principles of comparative fault and the liability of each person, including plaintiffs, defendants and nonparties who proximately caused the damages, shall be allocated to each applicable person in direct proportion to that person's percentage of fault.

W. Va. Code § 55-7-13a(b) (2015).

> West Virginia Code § 55-7-13d(a) allows a party to attribute fault to a nonparty by filing a notice within 180 days after service of process. It provides:
>
> (a) Determination of fault of parties and nonparties. –
>
> (1) In assessing percentages of fault, the trier of fact shall consider the fault of all persons who contributed to the alleged damages regardless of whether the person was or could have been named as a party to the suit;
>
> (2) Fault of a nonparty shall be considered if the plaintiff entered into a settlement agreement with the nonparty or if a defending party gives notice no later than one hundred eighty days after service of process upon said defendant that a nonparty was wholly or partially at fault. Notice shall be filed

6

with the court and served upon all parties to the action designating the nonparty and setting forth the nonparty's name and last known address, or the best identification of the nonparty which is possible under the circumstances, together with a brief statement of the basis for believing such nonparty to be at fault[.]

W. Va. Code § 55-7-13d(a)(1)-(2) (2015).

As set forth in the majority opinion, Pocahontas PSD filed its first amended counterclaim on May 12, 2020. This amended counterclaim was the first time that Pocahontas PSD asserted its new headworks improvement claim.[3] It is undisputed that Petitioner WWC filed its notice of intent to attribute fault to Orders Construction and A-3 USA within 180 days of the first amended counterclaim being filed. Therefore, I would find that the business court erred by concluding that Petitioner WWC's notice of intent to attribute fault was untimely.

Based on the foregoing, I respectfully dissent from the majority opinion's determination that it did not need to address Petitioner WWC's appeal of the business court's order finding that Petitioner's notice of intent to attribute fault was untimely. I concur with the majority opinion's resolution of the other issues in this case.

---

[3] Petitioner WWC notes that the allegations regarding the headworks in the amended counterclaim are different from those contained in the original counterclaim. The original counterclaim alleged three isolated issues with the headworks but it did not indicate that the headworks needed major or extensive repair. Conversely, in the amended counterclaim, the PSD alleged that the headworks repair could cost up to $1.5 million dollars.